SANDERS ET AL., APPELLANTS, *v.* NOBLE ET AL., RESPONDENTS.

[No. 1306.]

[Submitted January 11, 1899.  Decided January 31, 1899.]

*Mines—Location—Notice—Description—Veins.*

Under Revised Statutes of the United States, Section 2324, requiring a mining location to be distinctly marked on the ground, so that its boundaries can be readily traced, and all records to contain a description sufficient to identify it; and Political Code, Sections 3610, 3612, requiring the locator to post a notice at the point of discovery, giving the length claimed along the vein each way and its general course as near as may be

and within 90 days thereafter to file a declaratory statement giving a ˙description of the claim sufficient to identify it—the locator, having posted the notice stating the general course of the vein, may swing his claim in any direction required to include the vein, within the 90 days, and this though the notice laid the course to the points ˙of the compass, no bad faith being shown.

*Appeal from District Court, Jefferson County; M. II. Parker, Judge.*

Action by William H. Sanders and others against D. H. Noble and others.　　There was a judgment for defendants, and plaintiffs appeal.　　Reversed.

*Lew L.·Callaway, E. B. Howell* and *E. W. Harney,* for Appellants.

*J. S. Shropshire* and *M. P. Gilchrist,* for Respondents.

The court below did not err in holding that the plaintiffs were bound by the description in their location notice. (*Jubiter M. Co.* v. *Bodie M. Co.*, 11 Fed. 676; Morr. M. R., 40, 41, 61, 62, 28, 29; 1 Lindley on M., Secs. 344, 330, 371–3; *Upton* v. *Larkin,* 5 Mont. 600; *Horsewell* v. *Ruiz,* 67 Cal. 111; *North N. Co.* v. *Orient Co.*, 1 Fed. 532–3; *McGinnis* v. *Egbert,* 8 Cal. 41; *Field* v. *Grey,* 25 Pac. 793; *Gleason* v. *White M. Co.*, 13 Nev. 462; *Mount D. M. Co.* v. *Collison,* 5 Sawy. 449; *Hauswirth* v. *Butcher,* 4 Mont. 308; *Funk* v. *Sterrett,* 59 Cal. 613; Land Office Ru.es, Copp's M. L., 231, 276–305; 15 Ency. of Law, 527; *I. S. M. Co.* v. *E. M., Etc., Co.*, 118 U. S. 196; *Garfield M. Co.* v. *Hamer,* 6 Mont. 53; *Belk* v. *Meagher,* 104 U. S. 279; *McKinstry* v. *Clark,* 4 Mont. 395; *Noyes* v. *Black,* 4 Mont. 527; *Hopkins* v. *Noyes,* 4 Mont. 550; *Newbill* v. *Thurston,* 65 Cal. 419.)

Even if the plaintiffs had made a valid discovery, defend-ants still contend that they have no right to the ground in controversy by reason of the lack of˙ a valid location.　　But they had neither a valid discovery nor location.　　(A few of the authorities on these points are here cited: 1 Lindley, .Sec. 336, pp. 435–40; *Van Zandt* v. *Argentine M. Co.*, 8 .Fed. 725; *Book* v. *Justice Co.*, 58 ˙Fed. 106; *Upton* v. *Lar-*

*kin,* 5 Mont. 600; *Garfield M. Co.* v. *Hamer,* 6 Mont. 53; *McKinstry* v. *Clark,* 4 Mont. 370–395; *Noyes* v. *Black,* 4 Mont. 527.)

HUNT, J.—Plaintiffs, (appellants here) sued the defendants (who are the respondents) to enjoin certain trespasses upon the Never Sweat Lode Claim, and to enjoin them from asserting title to any portion of said claim, the ownership and possession of which plaintiffs allege to be in themselves. Defendants denied the ownership and possession of plaintiffs, and the validity of the Never Sweat location, set up their own title to the Yukon Lode Claim, and prayed that the same be quieted in themselves. The trial was had before a jury, and testimony was heard on both sides. At the conclusion of the plaintiff's rebuttal testimony, the defendants moved the court to instruct the jury to find in defendants' favor. The court granted the motion. Verdict and judgment were rendered in defendants' favor. Plaintiffs appeal from the judgment and an order overruling a motion for a new trial.

The ground of the defendants' motion to direct a verdict was that the plaintiffs had failed to make any proof of a compliance with the statute in respect to disclosing a well-defined crevice at the point of discovery of the Never Sweat claim for the depth of 10 feet. The court, however, did not sustain the motion upon the ground included therein, but held that defendants were entitled to a verdict because the plaintiffs were bound strictly by their location notice, and that, the plaintiffs having infringed upon the defendants' claim, they must be held to the lines of their location notice, and could not "get off onto some adjoining claimant's claim," and that, if they made a mistake, the prejudice lies at their door, and not at the door of the other parties upon whose rights they have infringed. To make the ruling of the court intelligible, and state the case on its merits, it is necessary to briefly recite what the evidence tended to show:

In August, 1897, W. H. Sanders, Henry Knight and J. W. Knight, three of the plaintiffs, were working and prospecting in the vicinity of the ground in controversy. They were co-

owners in the Copper Crown Lode Claim, which lies in a southwesterly direction, and adjacent to the Never Sweat. In a northeasterly direction from the Copper Crown there was an unappropriated triangular tract, approximately 600 by 900 feet. Plaintiffs, after endeavoring to trace float rock, finally succeeded, and followed the same up the hillside, where they commenced to dig, and found what appears to be the apex of the Never Sweat lode. On August 7th they made their discovery. They dug down about 2 feet, and on the surface cut a hole about $2\frac{1}{2}$ by 3 feet, finding in the hole what one of the plaintiffs says was a ledge of quartz, in a northerly and southerly direction, as near as he could tell. This ledge was traced by the float on the surface, but there was no outcropping on either side of the hole. On August 7th, Sanders and Knight, for themselves and the other plaintiffs, posted a notice of location at the point of discovery. It was in the usual form of location notices. It named the quartz claim as the "Never Sweat," and continued as follows: "Extending along said vein or lode five hundred feet in a southerly direction and one thousand feet in a northerly direction, from the center of the discovery shaft (at which shaft this notice and statement is posted), and three hundred feet on each side from the middle or center of said lode vein at the surface; comprising ·in all fifteen hundred feet in length along said vein or lode, and six hundred feet in width." Plaintiffs testified that, when they made this discovery, they intended to take the fraction above referred to, and supposed that their claim was running pretty near north and south. After putting up this notice of location of the Never Sweat, plaintiffs left that vicinity entirely, to fulfill a contract elsewhere, and were gone about 30 days. During their absence, the defendants, in August, went upon the ground involved in this controversy, and located the Yukon Mining Claim. One of the locators testified that he found some rich float on August 28th; that they saw the notice which was posted at the Never Sweat, and read it. Desirous of avoiding the locating of any ground unless it was vacant, the defendants started from the location of the Never Sweat, and

went due north, determining where due north was by the shadow of the sun about noon of the day they made their location. After measuring due north about 350 feet, they measured 300 feet down the hill, and concluded that they had about reached the side line of the Never Sweat. Then they measured 50 feet more, to allow the Never Sweat locators room "to swing their claim a little; we thought 50 feet was enough." Then they measured 150 feet from their discovery and located the Yukon claim easterly and westerly. Defendants ran a tunnel to the vein, disclosing the same at a depth of 10 feet or more. They explored and concluded their staking within a period of 30 days after the posting of the Yukon notice. They filed a declaratory statement with the county recorder of Madison county within 90 days, but the date of filing such statement was subsequent to the filing of the plaintiff's declaratory statement. When the plaintiffs got back to the Never Sweat, the defendants had completed the work of locating the Yukon, and had gone. Plaintiffs sunk a 10-foot shaft, established corner monuments, and recorded their declaratory statement of their location of the Never Sweat, all within 90 days after the posting of their notice as aforesaid. When they staked their claim, they located parallel to the Copper Crown, and included the discovery cut of the Yukon, which was 700 feet from the discovery point of the Never Sweat. The plaintiffs and the defendants had some conversation in relation to the conflicts, but it never resulted in any agreement between them. Plaintiffs also commenced to run a tunnel some 27 feet north of the mouth of the defendants' tunnel, and prosecuted this work until they tapped the vein claimed by defendants as the Yukon, about 12 feet at the head of the defendants' workings. This work was done after they had staked their claim so as to include the point referred to. Then plaintiffs notified the defendants to keep off the ground; the defendants refused, and both plaintiffs and defendants continued to work until suit was brought. The accompanying diagram illustrates the ground in question.

The respondents contend that there was no sufficient dis-covery made of any mineral, lode, or vein at the time the Never Sweat was located, and for that reason the Never Sweat location was void. We are advised, however, upon argument in this Court, that the learned Judge of the District Court did not pass upon this question raised by the motion of the re-spondents. It is here conceded that his decision was based solely upon the right of the locator of a mining claim to swing his claim within the statutory period of 90 days after the date

of his discovery and notice thereof, and that he passed upon no other point. Under the circumstances, therefore, we do not feel called upon to positively decide whether the location of the Never Sweat was absolutely void or not, for lack of sufficient discovery. There was considerable testimony of miners and others introduced upon this point by both sides, and, for the purposes of the present appeal, we shall hold that there was enough of a showing made by the plaintiffs to entitle them to stand upon the discovery as a valid one, within the meaning of the statutes of the United States and the State. One of the plaintiffs testified that, in making the location, they dug a hole, and found ledge matter, and a well-defined lead, which averaged from 12 to 18 inches wide; that the quartz was white, such as is found in that vicinity. Other witnesses testified that there was a vein in the shaft of the Never Sweat; that it dipped to the west; that it laid so flat that it only disclosed a hanging wall at the northwest corner of the shaft, and that on the lower side there was a foot wall; that the rock was in place, and that the vein was such as a miner would be willing to follow in the expectation to find ore of commercial value, and that it assayed from $2.40 to $3.20 in different portions thereof. These facts are sufficient to show that the location was made in good faith; and, at least until the District Court shall hold otherwise, we think plaintiffs proved a compliance with the provisions of Section 2320 of the Revised Statutes of the United States, requiring that there be a discovery of a vein or lode within the limits of the claim, before a valid location thereof can be made. (*McShane* v. *Kenkle*, 18 Mont. 208, 44 Pac. 979, and authorities therein cited; *Shoshone Mining Co.* v. *Rutter*, 31 C. C. A. 224, 87 Fed. 801.)

Passing, then, the question of a sufficient discovery, we address ourselves to the requirements concerning the marking of mining claims so that the boundaries can be readily traced, and to a consideration of the demands of the Federal statutes bearing upon the possessory rights to mining locations.

Section 2324, Rev. St. U. S., provides: "The location

must be distinctly marked on the ground *so that its boundaries can be readily traced.*    All *records* of mining claims hereafter made shall contain the name or names of the locator or locators, the date of the location, and such a description of the claim or claims located by reference to some natural object or permanent monument, as will identify the claim.'' This statute does not require a description of the claim to be included in the notice of location; nor does the United States demand more than that the claim shall be distinctly marked upon the ground, so that its boundaries can be readily traced.    The simple requirements of the laws of the United States have led courts to regard the mining laws as beneficial—to be liberally, not technically construed; to be expounded with as little differentiation as may be between former known actual customs of miners and the formulated expressions of Congress based upon those customs in present positive law.    Justice Bach in *Upton* v. *Larkin,* 7 Mont. 449, 17 Pac. 728, said:

''What are the two chief requirements of the statutes as far as the possessory right is concerned?    (1)  Discovery; (2) the marking of the claim upon the ground so that the boundaries can be readily traced.    The first requirement is made for the benefit of the United States, so that the land cannot be acquired under this law until its character is first ascertained to be mineral; the second is made in order that those going upon the ground may know that others have acquired and claim title thereto.    Certainly, these steps are very simple; the intricacies are those found by the courts of the states and territories wherein mineral lands are situated.''

We find certain statutory provisions included in the Codes, consistent, apparently, with the laws of the United States, and supplementary thereto.    The portions of the statute pertinent to the case at bar are as follows:

Sec. 3610 (Political Code).    ''Any person, a citizen, etc., * * * who discovers a vein or lode bearing gold, silver, etc., * * * may locate a claim upon such vein, lode or deposit, by defining the boundaries of the claim in the manner hereinafter described, and by posting a notice of such location at the point of discovery, which notice must contain:

"1. The name of the lode or claim.

"2. The name of the locator or locators.

"3. The date of the location.

"4. If a lode claim, the number of lineal feet claimed in length along the course of the vein each way from the point of discovery, with the width on each side of the center of the vein, and the general course of the vein or lode as near as may be."

Sec. 3611. "Before the expiration of ninety days from the date of posting such notice upon the claim, the locator or locators must sink a discovery shaft upon the lode or claim to a depth of at least ten feet from the lowest part of the rim of such shaft at the surface, or deeper if necessary to show a well defined crevice or valuable deposit. Its equivalent in work must be done upon placer claims. A cut, a crosscut or a tunnel, which cuts a lode at the depth of ten feet below the surface, or an open cut of at least ten feet in length along the lode from the point where the lode may be in any manner discovered, is equivalent to a discovery shaft. The locator or locators must define the boundaries of his or their claim by marking a tree or rock in place, or by setting a post or stone at each corner or angle of the claim," etc.

Sec. 3612. "Within ninety days of the date of posting the location notice upon the claim, there must be filed in the office of the county clerk of the county in which the lode or claim is situated, a declaratory statement, which must contain:

"1. The name of the lode or claim.

"2. The name of the locator or locators.

"3. The date of location and such description of the location of said claim with reference to some natural object or permanent monument as will identify the claim.

"4. If a lode claim, the number of lineal feet claimed in length along the course of the vein each way from the point of discovery, with the width on each side of the center of the vein, and the general course of the lode or vein as near as may be.

"5. If a placer or mill site claim, the number of acres or superficial feet claimed.

"6.    The dimensiens and location of the discovery shaft, or its equivalent, sunk upon lode or placer claims.

"7.    The location and description of each corner, with the markings thereon.

"Such declaratory statement must be verified by the oath of the locator, or one of the locators, and in case of a corporation by an officer thereof duly authorized to act."

Appellants' position is that, under these State statutes a claimant has 90 days after posting notice of location within which to define the boundaries of his claim, and that the course of the lead as given in the posted notice is but preliminary, and not binding upon the locator.    Respondents, on the other hand, insist that, although a locator has 90 days within which to *complete* his location, nevertheless the statute does not and could not extend the time within which a locator must *mark* the ground so that its *boundaries* can be readily traced, as required by the United States statute—in other words, a distinction is sought to be drawn between the Federal statute as to marking the ground so that the boundaries of the claim can be traced, and the State statute allowing 90 days within which to stake the claim, record the notice, and perfect the location.

Taking up the statutes quoted, it will be seen that to initiate and complete a mining location five acts must be performed:

1.    There must be a discovery.

2.    There must be a definition of boundaries, as required by Section 3611.

3.    There must be a posting of notice at the point of discovery.

4.    There must be development within 90 days from the date of posting the required notice.

5.    There must be a declaratory statement filed in the office of the county clerk.

The first essential was performed so far as the case now presents itself; and, it having been complied with by immediately thereafter placing at the point of discovery a notice as

required by statute, we believe that, until the expiration of 90 days thereafter, the plaintiffs' claim was valid and subsisting. All persons were warned of the claim of the Never Sweat lode, and, by the law, prospectors or others going within the limits included within the notice, to locate another claim, were trespassers. Coming after the discovery made, it was an appropriation of the land specified therein; and the two acts—discovery and posting the notice—constituted the origin of a good title to the Never Sweat mining claim. The condition of a continued ownership was development and a definition of boundaries, by marking a tree or rock in place, or by setting a post or stone at each corner or angle of the claim, as set forth in Section 3611, *supra.*

In the interpretation of statutes substantially like ours, we have the repeated adjudications of both Federal and State Courts, the more important of which we here collate:

In 1874 the Legislature of Colorado enacted that the discoverer of a lode should have 60 days from the time of the uncovering or disclosing a lode to sink a discovery shaft thereon, and should have three months in which to record his claim by a location certificate. (Mills' Ann. St. Secs. 3150, 3155.) Our statutes are generally similar to the earlier laws of Colorado. (Morrison's Mining Rights, p. 25.)

In *Erhardt* v. *Boaro*, (decided in 1881) 8 Fed. 692, the construction of the Colorado statutes came before the Circuit Court of the United States for the District of Colorado. The case there was this: Plaintiffs, while prospecting, discovered mineral, and set up their discovery stake, containing the name of the Hawk Lode, the date of the discovery, the name of the discoverers, and other matters, substantially as required by law. Thirteen days thereafter, the defendants pulled up the stake, threw it away, took possession, went to work in the same hole, and, having sunk the shaft to the required depth, made a location of the claim. The plaintiffs there contended that they were the discoverers of the lode, and that they had 60 days under the law in which to complete the sinking of their prospect shaft and make their formal

location.   Defendants contended that plaintiffs were not in
actual possession between the time they set their stake and
the time defendants entered and, furthermore, that the notice
upon the discovery stake of plaintiff's was not sufficient, in
that it failed to give the course of the lode.   Justice Miller
used the following language:

''The law of the State gives sixty days after making dis-
covery of mineral in which to sink a shaft ten feet in depth.
The main object of the sixty days possession, it seems to the
court, must be to allow time to discover the course of the
lode, in order that the location may be made thereon.   Coun-
sel for defendants made an ingenious argument to show that
the locator during those sixty days, to hold his right, must
remain in continuous actual possession of the ground.   The
court does not so hold.   If the discoverer put up a stake at
the discovery, giving the name of the lode, date of
discovery, and notice of his intention to locate the claim,
this is equivalent to actual possession.   Otherwise, the statute
serves no useful purpose.   The intention of the statute must
be that the setting up of the discovery stake, with the notice
thereon, as required, is equivalent to actual possession for the
sixty days, within which he may proceed to the next step, to-
wit: · Sink the discovery shaft to the depth of ten feet, have
survey made, mark the lines and make formal location.''

The Supreme Court of the State of Colorado, in *Armstrong
v. Lower*, 6 Colo. 581, in 1883, used the following language:

''Under the Federal and State statutes, two kinds of pos-
session of mining ground are recognized: First, where the
miner, by virtue of work and improvements upon a tract of
mineral land and occupancy thereof, holds the same independ-
ent of location statutes against one having no better right;
secondly, where, after discovering a vein, the miner under-
takes to avail himself of the benefits of the location statutes.
The law gives him possession of his entire claim as marked
upon the surface for the period of ninety days from the date
of discovery, provided he post his discovery notice and,
within sixty days next after such date, sink his discovery

shaft.    Having perfected his location by a full compliance
with the requirements of the statutes, his possession of the
entire claim remains until he does or omits to do something
which, in law, amounts to an abandonment thereof.''

*Erhardt* v. *Boaro, supra,* was determined by the Supreme
Court of the United States on appeal (113 U. S. 527, 5 Sup.
Ct. 560), in 1885, and the views that had been expressed by
Justice Miller from the Circuit Court were affirmed through
Justice Field.    The Hawk Lode, involved in that case, was
claimed by the following notice, posted at the point of dis-
covery:

''Hawk Lode.

''We, the undersigned, claim 1500 feet on this mineral-
bearing lode, vein or deposit.    Dated June 17, 1880.

''Joel B. Erhardt, 4-5ths; Thomas Carroll, 1-5th.''

After holding that the notice on the stake, placed at the
point of discovery, contained a sufficient specification or de-
scription of the ground claimed by the locators, the Court ex-
pressly held that the statute of the United States allows a dis-
coverer to locate a claim upon a lode or vein to the extent of
1500 feet, and that Erhardt's notice informed all persons sub-
sequently seeking to excavate and open the lode or vein that
the locators claimed all that the law permitted them to take.
The notice was regarded as indefinite, simply, however, in not
stating the number of feet claimed on each side of the dis-
covery point, but that as a notice of discovery and original
location, it was sufficient.    The Court goes on to say:

''Greater particularity of description of a location of a min-
ing claim on a lode or vein could seldom be given until subse-
quent excavations have disclosed the course of the latter.
These excavations are to be made within sixty days after the
discovery.    Then the location must be distinctly marked on
the ground, so that its boundaries can be readily traced and,
within one month thereafter—that is, within three months
from the discovery—a certificate of the location must be filed
for record in the county in which the lode is situated, con-
taining the designation of the lode, the names of the locators,

the date of the location, the number of feet claimed on each side of the center of the discovery shaft, the general course of the lode and such a description of the claim, by reference to some natural object or permanent monument, as will identify it with reasonable certainty. (Rev. St. U. S., Sec. 2324; Gen. Laws Colo.; Secs. 1813, 1814.)

"But during the intermediate period, from the discovery of the lode or vein and its excavation, a general designation of the claim by notice posted on a stake placed at the point of discovery, such as was posted by Carroll, stating the date of the location, the extent of the ground claimed, the designation of the lode and the names of the locators, will entitle them to such possession as will enable them to make the necessary excavations and prepare the proper certificate for record. The statute of Colorado requires that the discoverer before a certificate of location is filed for record shall, in addition to posting the notice mentioned at the point of discovery, sink a shaft upon the lode to the depth of at least ten feet from the lowest part of such shaft under the surface or deeper if necessary to show a defined crevice, and to mark the surface boundaries of the claim. Before this work could be done by the plaintiff and his co-locator, the ground claimed by them was taken possession of by the defendants; the stake at the point of discovery, upon which the notice was posted, was removed; and Carroll was thereby, and by threats of violence, prevented from re-entering upon the premises and completing the work required to perfect the location and prepare a certificate for record—at least the evidence tended to establish these facts. If they existed—and this was a question for the jury—the plaintiff was entitled to recover possession of the premises. To the extent of seven hundred and fifty feet on the course of the lode on each side from the point of discovery, he and his co-locator were entitled to protection in the possession of their claim. They did not lose their right to perfect their location and perform the necessary work for that purpose, by the wrongful intrusion upon the premises, and by

threats of violence if they should attempt to resume posses-
sion.  As against the defendants, they were entitled to be re-
instated into the possession of their claim.  They could not
be deprived of their inchoate rights by the tortious acts of
others; nor could the intruders and trespassers initiate any
rights which would defeat those of the prior discoverers."

Further on in the opinion it is laid down that, whenever
preliminary work is required to define and describe the claim
located, the first discoverer must be protected in the posses-
sion of the claim until sufficient excavations and development
can be made so as to disclose whether a vein or deposit of such
richness exists as to justify work to extract the metal.
"Otherwise," say the Court, "the whole purpose of allowing
the free exploration of the public lands for the precious
metals would in such cases be defeated and force and violence
in the struggle for possession, instead of previous discovery,
would determine the rights of claimants."  And, as meeting
the argument of respondents' counsel in the case under con-
sideration, that the laws of the United States require the ex-
cavations necessary to enable the locator to prepare and record
a certificate to be made directly after his discovery, the Court
certainly held that the Federal laws do not prescribe any time
in which such excavations and record shall be made, but say
that that is left to the legislation of the State, which in Colo-
rado prescribed at that time 60 days for the excavations upon
the vein from the date of discovery, and 30 days afterwards
for the preparation of the certificate and filing.

Again, this case of *Erhardt* v. *Boaro* refutes that portion
of the respondents' argument wherein it is said that the plain-
tiffs' location of the Never Sweat was for speculative purposes,
and made without discovery, with a view to profit by the ex-
plorations and discoveries of the defendants.  Justice Field
said that if there is a discovery of the presence of the precious
metals in the location, or in such proximity to it as to justify
a reasonable belief in their existence, "then protection will be
afforded to the locator to make the excavations and prepare
the proper certificate for record."

In *Iron Silver Min. Co.* v. *Elgin Mining & Smelting Co.*, 118 U. S. 196, 6 Sup. Ct. 1177, the Supreme Court considered the Federal statute requiring the location of a claim to be distinctly marked on the ground, so that its boundaries may be readily traced, and used the following language:

"Such location often precedes any extended explorations, and is therefore made without accurate knowledge of the course and direction of the vein. When a vein has been discovered, the rules of miners, and the legislative regulations of mining states and territories, generally allow some specified time for explorations before the location is definitely marked. But miners discovering a lode are sometimes in such haste to locate their claim, and mark its extent and boundaries on the surface, that they omit to make sufficient explorations to guide them aright in measuring the ground and fixing its end lines. Hence efforts are not infrequently made to change those lines when the true course and direction of the vein are ascertained by subsequent developments."

After discussing the difficulty in applying the statutes of the United States providing for the extent of the right of the possession and enjoyment of all the surface included within the lines of mining locations, it was remarked:

"The remedy must be found, until the statute is changed, in carefully making the location, and in *postponing the marking of its boundaries until explorations can be made to ascertain, as near as possible, the course and direction of the vein.* In Colorado the statute allows for this purpose 60 days after notice of the discovery of the lode. Then the location must be distinctly marked on the ground, and 30 days thereafter are given for the preparation of the proper certificate of location to be recorded. (*Erhardt* v. *Boaro*, 113 U. S. 527, 5 Sup. Ct. 560.)"

This case thoroughly affirms so much of the *Erhardt* v. *Boaro* decision as implied the allowance of 60 days given by the State statute for the marking of the boundaries until explorations could be made to ascertain, as near as possible, the course and direction of the vein, before distinctly marking the location on the ground.

In *Omar* v. *Soper* (decided in 1888), 11 Colo. 380, 18 Pac. 443, it was said:

"To·hold that the miner, as soon as he discovers a lode, must immediately stake the territory which he is entitled to claim thereon, in order to protect it from the invasion and claims of other persons learning of his find, would be an unreasonable, if not an impossible, requirement. An attempt to do so would result, in many cases, in leaving the main portion of the lode outside the staked boundaries. The object of the statute in·giving 60 days for sinking the discovery shaft was evidently to afford the miner time to sink his shaft, and to ·ascertain the true course of his lode, when he would be qualified to mark its boundaries on the surface. When the legislative intent is clear, or can be reasonably inferred, it is held to be the duty of the courts to so construe the statute as to render it effective, if possible to do so under the rules of statutory construction. (*Simmons* v. *Powder Works*, 7 Colo. 285–289, 3 Pac. 420.) To hold that the claim is protected throughout its whole extent, during this period, from invasion and adverse claims, by a notice which, in addition to the statutory requirements, shall specify the extent of territory claimed along the vein on both sides of the point of discovery, is both reasonable and equitable. It is likewise consistent with the spirit and policy of the statute, and a construction which renders it effective. Such a notice, properly made and posted, is an appropriation of the territory specified therein for the period of 60 days. It has been repeatedly held that only the unappropriated mineral lands of the United States are open to exploration and location. No one can therefore lawfully enter upon the territory so claimed, during the period named, for the purpose of initiating a claim thereto; and it necessarily and logically follows, from an application of the same rules and principles, that no one, during this period, can stand outside such appropriated territory, and in any manner initiate a claim thereto capable of being rendered valid in the future by the happening of fortuitous circumstances."

The statutes of South Dakota (Pol. Code, Comp. Laws Dak.

:Sec 1997 *et seq.*) require a discoverer of a lode to record his
·claim within 60 days from the date of the discovery, by a lo-
·cation certificate containing much the same information re-
·quired by the laws of Montana, and that before filing such
·certificate the .discoverer shall do certain development work,
and post a notice, and mark the surface boundaries.    These
statutes were construed in *Marshall et al.* v. *H. P. T. M. M.
·& Manufacturing Co.* (decided in 1890) 1 S. D. 350, 47 N. W.
290.    As particularly appropriate to the facts of the present
·case, we quote from that decision:    "The testimony of the
plaintiffs shows that they did  make the discovery, uncovered
.and disclosed the lode, and  placed at the point of discovery a
notice as required by the statute; and, until the expiration of
:sixty days, their claim was a valid, subsisting mining claim,
by reason of this discovery.    The notice  posted notified any
·one coming within the limits described by that notice, for the
purpose of making another location, that there had been a
previous location; and, if they attempted to occupy any por-
tion or all of that ground described within the limits of the
notice, they would be trespassers.    In all legislation, whether
by Congress or the State or Territory, and by·all mining regu-
lations and rules, discovery and appropriation are recognized
.as the sources of title to mining claims, and development, by
working, as the condition of continued ownership, until it is
·obtained.    Whenever preliminary work is required to define
.and describe the claim located, the first discoverer must be
protected in the possession of the claim until sufficient excava-
tions and developments can be made so as to disclose whether
.a vein or deposit of such richness exists as to justify work to
·extract the metal.    The notice of plaintiffs of July, 1884,
constituted an appropriation of the territory specified for the
period of 60 days; and if the location of Coates was a portion
of that territory, or all of it, and was made before the 60
:days had expired, it was not a valid location, and he could ac-
·quire no right by reason of it."

Prior to these several last referred to decisions, the case of
*Newbill et al.* v. *Thurston et al.*,  65 Cal. 419, 4 Pac. 409,

was decided by the Supreme Court of that State in 1884 and, seemingly, took a contrary view to the decisions just referred to. It appeared in that case that Newbill went upon the mining ground there in controversy, posted a notice, and erected a discovery monument. No other marks were made or monuments erected at that time by him, but the notice stated that the locator claimed 20 days within which to mark the boundaries and record the claim. The ground claimed by the notice extended 500 feet southeasterly, and 1,000 feet northerly, from the notice. For the two weeks following March 26, 1881, which was the date of the discovery and notice, Newbill was upon the claim several times, although he went to other mining regions and posted notices there. On April 5th the defendants' grantors made a location, properly marked, embracing a portion of the ground "indicated," as the Court expresses it, "in the Newbill notice." On the 10th or 11th of April, Newbill made an arrangement with his co-plaintiffs by which they were to complete his location, for their mutual benefit. Notice was accordingly posted on behalf of said plaintiffs, and monuments erected. When suit was brought to recover as much of the one claim as was within the boundaries of the other, the Superior Court found that, from the time of the discovery by Newbill until the marking of the boundaries was finally completed, no unreasonable time elapsed, and that there was no unreasonable delay, or any delay, except such as was necessary and unavoidable. The Supreme Court of California reversed the case, holding that, while the Act of Congress does not state any time within which the location must be completed, yet it says the claim must be distinctly marked on the ground, so that its boundaries can be readily traced and that, if a person is not on the ground engaged in marking the boundaries of his claim the subsequent locations are to be regarded as prior in time, and must prevail.

This same ground involved in the Newbill case, later on, in 1893, became the subject of a controversy in the Federal courts and we find the questions involved discussed in *Doe* v.

*Waterloo Mining Co.*, 55 Fed. 11. The case on its facts, as stated by Judge Ross, is very close to the controversy before us. The defendants there saw the notice that had been posted by Newbill when they made their location, which took in a part of the ground that would be included by embracing within the boundaries of Newbill's claim as they had been established for Newbill and others. The court regarded the question as of "easy solution," and discussed it as follows:

"Newbill was the first discoverer of the ground in question. True, upon the day of its discovery—March 26, 1881 —he did not establish monuments around the exterior boundaries of the claim; and those monuments were not marked at the time Warden and Yager located the Mammoth claim, on the 6th of April, 1881. But the notice on the stake placed by Newbill at the point of his discovery notified Warden and Yager, and every one else, that Newbill had located and claimed the vein for 1,000 feet in a northwesterly direction and for 500 feet in a southeasterly direction, from the discovery stake, with 300 feet on each side thereof. A less definite notice was held sufficient to protect the locator against the acts of subsequent locators by the Supreme Court in the case of *Erhardt* v. *Boaro*, 113 U. S. 527, 5 Sup. Ct. 560."

In California at that time there appeared to be no mining rules or regulations fixing the time within which locators should establish the exterior boundaries of their claims; but Judge Ross held that locators should be allowed a reasonable time, and that it had not expired when the defendants went upon the ground that had been claimed by Newbill. "They then saw," continues the Court, "and should have read Newbill's notice of March 26th, claiming the vein on which it was posted for 1,000 feet northwesterly and 500 feet southeasterly of his discovery monument, together with 300 feet on each side of it, and claiming the reasonable time of twenty days within which to mark the exterior boundaries of his claim. Warden and Yager were thereby apprised that no part of the ground embraced by Newbill's notice was open to location by them, and their act in including a part of that ground was therefore nugatory.

"Speaking of a similar notice the Court, in the case of *Marshall* v. *Manufacturing Co.*, (S. D.) 47 N. W. 293, said: 'The notice posted notified any one coming within the limits described by that notice for the purpose of making another location that there had been a previous location and if they attempted to occupy any portion or all of that ground described within the limits of that notice, they would be trespassers.'

"It is suggested that the act of Parks, Wallace and Farrell in marking the exterior boundaries of the Red Jacket claim, on the 12th of April, was unavailing, because one of those corners was established within the boundaries of the Mammoth claim, as established by Warden and Yager on the 6th of April. To affirm that position would be to affirm that the perfecting of the right initiated by Newbill on the 26th of March could be arrested and defeated by the illegal and void act of Warden and Yager in embracing within the boundaries of the Mammoth claim ground not at the time subject to location. I think it clear that the defendant, Waterloo Mining Company, is entitled to that portion of the mining ground in dispute that is embraced by both the Red Jacket and Mammoth locations, and that complainant, Doe, has no right thereto nor interest therein."

In 1894 the Supreme Court of Oregon, in *Patterson* v. *Tarbell*, 26 Or. 29, 37 Pac. 76, was called upon to pass upon the right to the possession of certain surface ground within the boundaries of the Collateral Quartz Mining Claim, located and owned by plaintiff, and the Palmer Quartz Mining Claim, located and owned by the defendant. Tarbell was prospecting within the limits of the Virtue mining claim, by permission of the owner of the latter claim. His object was to trace the new veins if he could, to the adjoining public lands, with a view of locating a claim. He discovered a spur which he traced to its intersection with a gold-bearing vein of quartz upon unoccupied land. From February, when he was prospecting, until April, he continued his work at intervals, for the purpose of determining the course or strike of the lead

discovered by him and in so doing sunk several shafts along the course or strike of the lode or vein.  About March 10th, and soon after making the discovery, he posted a notice at the first shaft sunk by him and put up some preliminary stakes.  He then went away to secure a mineral surveyor; and, during his absence, plaintiff, supposing the ground unoccupied, located the Collateral claim, posted a notice and marked the boundaries in a manner required by law and embraced the shafts and pits dug by the defendant.  The contention of the defendant in that case was that the first discoverer of a lode or vein has a reasonable time after the discovery in which to trace out and determine the direction or course of such vein or lode before locating his claim and in the meantime is protected in his right to 1,500 feet of surface ground in length along the vein or lode and 300 feet on either side; while the plaintiffs contended that, *as soon as a discovery is made, the claim must be located, by marking its boundaries on the ground.*  The Court emphasized the fact that there is no specific time allowed by the laws of Oregon for exploration after a discovery is made, and before a location is required to be definitely marked on the ground; and, in the absence of such legislation, they met the question presented as one to be determined by the mining laws of the United States.  It was decided that, in the absence of local legislation allowing some time for exploration, the discoverer of a lode "must *immediately* locate his claim, by distinctly marking the same on the ground, so that its boundaries can be readily ascertained, in order to hold it against a subsequent valid location peaceably made."  Among other things the Court said:

"Requiring the discoverer of a mine to proceed diligently to complete his location, without waiting to trace the course or strike of the vein or lode, may in some instances work an apparent hardship; but until the matter is provided for by some local rule or regulation it is better, whatever the effect may be in particular cases, that the rule should be settled, and thus prevent as far as possible the uncertainty in titles to mining claims, and the strife and litigation among miners,

which would necessarily follow if the discoverer is allowed an indefinite time in which to develop his lode or vein, which, in many instances, would require much time and labor and a large expenditure of money. If, during such development or exploration, he is allowed to hold a floating grant to surface ground six hundred by fifteen hundred feet in size, with the right to definitely locate the same as he may subsequently determine, it would create great uncertainty in mining titles, increase litigation, and often defeat the purpose and object of the law, throwing open the mining lands of the country to occupation and purchase. Nor do we find anything in the authorities cited by the defendants in conflict with the rule which we have suggested. The decisions in the cases of *Iron Silver Min. Co.* v. *Elgin Mining & Smelting Co.*, 118 U. S. 196, 6 Sup. Ct. 1177; and *Erhardt* v. *Boaro*, 113 U. S. 527, 5 Sup. Ct. 560, were both made under the law of Colorado, which allows the discoverer a specified time for exploration before marking the boundaries of his claim.''

This case follows the California rule in *Newbill et al.* v. *Thurston, supra*, but it undoubtedly conflicts with the decision of Judge Ross in *Doe* v. *Mining Co.*, *supra*, and with *Patterson* v. *Hitchcock*, (decided in 1877) 3 Colo. 533, but, so far as it bears upon the case at bar, by implication it affirms the views that, where there is a State law allowing the discoverer a specified time for exploration before marking the boundaries of his claim, he will be protected in his possession until he has complied with the State statute.

The last decision which we have been able to find in point is the appeal of *Doe* v. *Waterloo Mining Co.* to the Circuit Court of Appeals (17 C. C. A. 190, 70 Fed. 455). The opinion of the Court is by Judge Knowles, whose opinions upon questions of mining law, as recorded in the earlier Montana Reports, and in later years in the Federal Reports, have always been regarded with very high respect by the profession. After recapitulating the facts connected with the discovery and location by Newbill, as heretofore set forth, the learned Judge goes on to say:

"The first contention is that the location of the Red Jacket gold, silver and nickel mining claim is not a completion of the claim made by Newbill. The Supreme Court of California, upon the same evidence, in the case of *Newbill* v. *Thurston*, 65 Cal. 419, 4 Pac. 409, held that it was not. With the highest respect for that distinguished Court, I cannot come to the same conclusion. Newbill undoubtedly made some kind of a mineral discovery on the ground located. He posted a notice on this ground, claiming the right to locate some 1,500 feet on the same—500 feet in one direction, and 1,000 feet in another, from the point where he posted his notice. He went upon the ground after this, with the view of marking the boundaries of his location, and was prevented by sickness. He made an agreement, for a valuable consideration, with Parks, Wallace and Farrell, by which they were to complete his location. In pursuance of that agrement, they did complete it. That was the contract and intention of all parties. The fact that a new location notice was posted by them on the ground, in which an addition of some descriptive terms was applied to the name given in the location notice of Newbill, cannot make it a new location. The ground was what was sought, not a name. There is no objection to changing the name of a location until after a record is made of the same. There can be no objection to changing the description in a location notice, so other ground is not embraced, up to the date the location notice becomes a record. From necessity, such a fact would often occur in the location of mining ground. A location notice generally does describe the ground located, and not what it is proposed to locate. The notice of Newbill should have no other force than a notice of discovery. As a notice of discovery and intention to claim and locate the ground described therein, it was certainly sufficient. (*Erhardt* v. *Boaro*, 113 U. S. 527, 5 Sup. Ct. 560; *Marshall* v. *Manufacturing Co.* (S. D.) 47 N. W. 293.)"

Judge Knowles also discusses proof of a custom in a particular mining district, allowing a discoverer of a mineral-bearing vein 20 days after his discovery in which to fully com-

plete his location of his claim, and says, without qualification, that there is no doubt that the discoverer of a mineral vein should have a reasonable time after the dicovery of his vein in which to complete his location embracing the same, and further he says: "Wherever there has been any legislation upon the subject, the time given after the discovery in which to complete a mining location has exceeded twenty days. The statute in Colorado is sixty days, and the record thereof must be made within thirty days thereafter. Without consulting what has been considered by rules and regulations or statute law upon the subject as to the time within which after discovery the location of a mining claim should be completed, we would say that what would be a reasonable time for such completion would depend upon the circumstances affecting the ability of the locator to properly define his claim."

Lindley, in his valuable and highly approved work on mines, discusses the conflicting rulings in the Newbill Case, but approves of the Federal decisions, as according to the spirit of the law as interpreted by the Supreme Courts of Colorado and of the United States. He says: "To hold that the miner, as soon as he discovers a lode, must immediately stake the territory which he is entitled to claim, in order to protect it from invasion and claims of other persons, would be an unreasonable, if not impossible, requirement." (Section 339.)

He also lays it down that, where the statutes require preliminary work in order to define and describe the claim located, the first discoverer "must be protected in the possession of the claim until sufficient excavations and development can be made so as to disclose whether a vein or deposit of such richness exists as to justify the work to extract the metal." He sums up the logical consequence of the rules established by the case of *Erhardt* v. *Boaro*, and the later Federal decisions which have followed that decision, in the following language:

"The effect of this rule is practically to reserve, after the discovery and during the statutory period allowed for perfecting the claim, a surface area circular in form, the radius of

which may be the length claimed on the discovered lode, within which area the location may be ultimately made. Such is the manifest intent of the rule. This was the custom under the act of 1866. The miner posted his notice, claiming so many linear feet on the vein; and under the law as then interpreted, prior to fixing the *situs* of his lode, by filing a diagram for patent purposes, he might follow the vein wheresoever it ran, to the length claimed. When he filed his diagram, and inclosed his lode within surface boundaries, his right to pursue the vein on its course ceased, when it passed out of his surface lines.

"Under the existing state of the law, the location must be marked within a certain period of time, whereupon the locator's rights become definitely fixed and confined, except as to the extralateral right, to his marked boundaries. Until this is done, however, and within the prescribed period, his right to be protected to the extent heretofore stated is well settled." (Section 339.)

The decisions of the Supreme Court of the Territory and of the State rendered prior to the enactment of the statutes which require development work before boundaries are to be defined cannot control the present condition of the law. It is true, we think, that one of the objects in requiring a location to be marked upon the ground is to fix the claim, and to prevent floating or swinging, so that those who are in good faith looking for unoccupied ground may know exactly what has been appropriated; and we thoroughly agree with the principle announced in *Hauswirth* v. *Butcher*, 4 Mont. 299, 1 Pac. 714, that the provisions of the law designed for the attainment of this object are very important, and ought not to be frittered away by construction; but, on the other hand, it is of equal importance that the miner have ample opportunity to perfect his mining location, in order that he may be protected in the full enjoyment of the rights accorded to him by the Federal statutes. And it was for the purpose of affording the full enjoyment of these rights that the State statutes were passed, merely postponing the necessity for definition by marking the

boundaries of his claim until he may have full opportunity to ascertain the strike or course of the vein or lode which he has discovered. The law has said that he must do all this within ninety days. Thereafter there can be no floating or swinging. But up to the expiration of that time, under the decisions quoted, we are forced to conclude that, if in good faith, he may use his discovery post as a pivot, and move his lines, at least in the general course of his vein given in his notice, so as to secure the full benefit of his discovery.

The distinction between the notice of discovery or notice of location required to be posted on the claim by Section 3610, and the declaratory statement required to be filed for record by Section 3612, is a substantial one, easily understood when the purpose of each is kept in mind. The notice of discovery should be, and usually is, posted immediately at the discovery hole, and often before the discoverer can possibly survey or even measure his ground. It is often done before even specific bearings are known. It is a simple announcement, and meant only to be a simple notice of a discovery, and of an intention to claim the vein discovered, and, by posting it, the discoverer finds an easy and quick way of announcing his claim. Afterwards, though, when an opportunity is had to follow the vein on its strike, then the boundaries must be marked, and the claim must be described by reference to natural objects or permanent monuments. Then it is, too, but not before, that the evidence of the location must be preserved, by recording the declaratory statement containing such description of the location with reference to some natural object or permanent monument as will identify the claim.

The *notice of location* is a protection to the discoverer during the process of location. "The *record* of a mining claim," says Judge Ross in *Gird et al.* v. *Cal. Oil Co.*, 60 Fed. 531, "when one is required, is intended to contain a more exact and specific description of the claim than the notice posted upon it." (*Gleeson* v. *Mining Co.*, 13 Nev. 465.)

But respondents' counsel say, even if this be the law generally, yet in this case, plaintiffs having described their loca-

tion by their notice as extending along the Never Sweat lode
claim in a southerly and northerly direction from the center
of the discovery shaft, they cannot now object to the acts of
defendants in running the lines of the Never Sweat *due* north
and *due* south, so as to allow defendants to perfect a location
of the Yukon claim without the lines of the Never Sweat when
so run due north and due south. This argument, of course,
involves the proposition that the statute which requires a no-
tice to be posted at the point of discovery, in which must be
contained the general course of the vein or lode "as near as
may be," demands an accurate description of the course of
the vein by the points of the compass. We cannot adopt such
a construction of the law without frittering away the under-
lying purpose of the statute to give to the discoverer ninety
days in which to define the boundaries of his claim; for, if he
must accurately state the general course of the vein in his no-
tice posted at the point of his discovery, and at the time there-
of, and is to be held to such course literally, the development
work that he is required to do to demonstrate whether he has
a claim worth further exploitation would be of no avail to him
if it should demonstrate that the course of his vein varies even
to the slightest extent from the general course given in his
discovery notice. The statute requires only that he give the
general course "as near as may be;" and where, as in this
case, the course is given as southerly and northerly, and it
subsequently appears by the surveyor's plats that the course of
the vein is not *due* north and south, in the absence of proof of
a lack of good faith we hold that such a notice is sufficient and
valid.

In *Book* v. *Justice Mining Co.*, 58 Fed. 106, a claim was de-
scribed as beginning at the southwest boundary of the West
Justice and lying north of the Ennis mine. It was argued in
the Circuit Court of the United States that the locations were
invalid because notices were posted that did not correctly de-
scribe the lode. Judge Hawley said:

"In construing notices of this character, where, under
the mining rules and local regulations or State laws, such

notices are required to be posted upon the ground, the courts are naturally inclined to be exceedingly liberal in their construction.   Such notices are often drawn by practical miners, unaccustomed to legal forms and technical phraseology; hence the language used in the notices is often subject to more or less criticism by counsel learned in the law, and engaged in preparing documents in legal shape and form.   Then, again, locations are often made without any accurate knowledge of the true course and  directions which a compass would readily give, and mistakes in the notice as to the direction and course of the ground located often occur.   But such mistakes do not invalidate the location.   Positive exactness in such matters should never be required.   It is the marking of the location by posts and monuments that determines the particular ground located.''

In that same case the location notice described the claim as extending 1,500 feet in a northerly direction.   That was a mistake so far as the direction was concerned, as true north would have carried the line over and across another mine, instead of along the proper line, but the Court said:

''The word 'northerly,' under such circumstances, conditions and surroundings, should not be interpreted as meaning due north.   It includes and may mean any meridian line or course between a due north and northwest, and is defined and made certain by the posting of the stakes or the building of the monuments at the corners of the locations, or along the lines thereof.   Such stakes or monuments would control the courses specified in the notice.''.   (*West Granite Mountain Min. Co.* v. *Granite Mountain Min. Co.*, 7 Mont. 356, 17 Pac. 547; *Gamer* v. *Glenn*, 8 Mont. 379, 20 Pac. 654.)

The respondents' counsel, in their brief, tell us that the court was impressed with the bad faith of these plaintiffs; but there is nothing in the record which informs us that the court considered that question at all, and we cannot presume that they acted in other than good faith.

To extend the discussion of these questions would be useless.   The law is too well settled to be disturbed at this late

day, and the only clear deductions which we can make are in harmony with Lindley's statement, as we have quoted it.    If the locator postpones marking his boundaries, he must be protected until the statutory time given him in which to do the acts required has elapsed; and until he has done what the statutes require, if his notice is valid, and he has a discovery all persons proceeding to enter within the limits of the ground located do so at their peril.

If the questions which we have discussed were *res integra*, we should be disposed to take a view of the Federal statute (Section 2324) differing from the rule of *Erhardt* v. *Boaro*, *supra*, and to agree with the California and Oregon cases cited, which interpret the law as requiring an immediate marking of the location on the ground, so that the boundaries can be readily traced, or that a *possessio pedis* be had until they can be so marked within a reasonable time.    There is a great deal to be said in support of the argument that Congress never meant to allow the discoverer to stop his work, leave his claim and postpone marking his boundaries for any period of time.    The effect of the present construction is to give advantages to the discoverer beyond what the statute seems to fairly contemplate; and yet, if the right to postpone the marking of the boundaries for 90 days exists, there is no escape from the conclusion that the right to swing in good faith during that time goes with it.    This is so because the reason for allowing the right to postpone is to definitely ascertain the strike, so that the discoverer may secure the benefit of his location before marking.    Therefore where the discoverer gives as he must under the State statute the general course of his vein· in his discovery notice and, notwithstanding those courses, he· can postpone marking the ground for 90 days thereafter, so that the boundaries of his claim may be traced, it should necessarily follow that, if the course given in the notice posted is not the true course of the lode as ascertained, he may swing his claim so as to include within his boundaries ground that was not embraced in the notice of discovery, provided it includes the true course of the vein claimed.    This right to·

postpone thus gives a discoverer a circle to move his claim in until he marks its boundaries, the radius of the circle being ordinarily a distance equal to the longest distance claimed from the point of discovery.    This for a time practically withdraws a large area from the public domain and compels prospectors to abide the time when the discoverer of a vein may elect to mark his ground.    We doubt if Congress ever intended such a consequence.    The question, however, involves Federal laws and statutes complementary of Federal laws; so we feel bound by the interpretations of the United States Courts, hence dismiss the subject with the foregoing observations of our own.

The application of what we have said necessarily leads to the conclusion that the defendants in this case had no right to embrace in the location of the Yukon any of the ground included within the boundaries of the Never Sweat, as the plaintiffs defined said boundaries within the period of 90 days after their discovery of the Never Sweat.

The judgment is reversed and the cause remanded with directions to grant a new trial.

*Reversed and remanded.*

BRANTLY, C. J., and PIGOTT, J., concur.

