## No. 9349.

### COURTNEY ET AL. v. WARD.

1. MINING CLAIM—*Amended Location Certificate.* Where the original certificate fails to refer to any natural object or monument, an amended certificate, filed pursuant to the statute, is admissible in evidence against one claiming under a subsequent location. Nylund v. Ward *ante*, followed.

2. *Notice at Discovery Shaft—Error In.* The location certificate fixes the boundaries of the claim, and subsequent locators are affected thereby in spite of errors in the notice posted at the discovery shaft.

The latter notice is not designed as a permanent affair.

3. ESTOPPEL—*By Conduct.* Statements made by the locator of a mine, to a subsequent adverse locator, as to the extent to which he and his associates will claim, all the facts being known to the junior locator, who has already acted, is no estoppel.

*Error to Mesa District Court, Hon. Thomas J. Black, Judge.*

Mr. BENJ. GRIFFITH, for plaintiff in error.

Mr. CARL J. SIGFRID, for defendants in error.

Mr. Justice Scott delivered the opinion of the court.

THE defendants in error located the Calamity lode mining claim No. 5, in the Blue Creek Mining District in Mesa County, Colorado, on the 8th day of April, 1913.

The plaintiffs in error located the Dixie lode mining claim on June 16, 1914, in the same district, which location crosses the westerly end of the Calamity No. 5, thus constituting the conflict.

The defendants in error brought this suit for possession of that portion of the Calamity No. 5 in conflict. The cause was tried to a jury and verdict rendered in favor of the defendants in error, plaintiffs below, and judgment rendered accordingly.

The principal error assigned is that the original location certificate of plaintiff failed to tie the claim to some natural

object or monument, and that the admission in evidence of the amended or additional location certificate, correcting this omission, constituted reversible error.

The precise question was decided in the case of *Nylund v. Ward et al.*, determined at this term of court, adversely to the contention of the plaintiffs in error.

2.  It appears that plaintiffs staked the boundaries of the Calamity lode as 1,100 feet westerly and 400 feet easterly from the discovery shaft, and it was so described in the location certificate, but through an error, the posted notice at the discovery shaft fixed the length of the claim as 1,100 feet easterly and 400 feet westerly.

The court instructed the jury upon this point to the effect that:

"The locator may lay out his mining claim in any direction and in any way he sees fit, providing the claim is so laid out and the boundary lines marked as is by law required, before any third parties enter to make a location, and in this case if you should find from the evidence that the plaintiffs laid out their claim eleven hundred (1,100) feet westerly and four hundred (400) feet easterly, and this was done before the defendants located their Dixie lode, then it is immaterial that the notice of Calamity No. 5 mining claim called for a location one thousand (1,000) feet easterly and four hundred (400) feet westerly."

The plaintiffs in error contend that this was an erroneous statement of the law, and that the defendants were bound by the posted notice at the discovery shaft, as against a subsequent locator.

It is admitted that the boundary stakes were set as claimed by plaintiffs, and plainly marked, but it is contended that plaintiffs in error were misled by the posted notice at the discovery shaft, and did not proceed to a distance of 1,100 feet westerly therefrom to look for the boundary stakes marking the westerly boundary line.  The notice at the point of discovery is not designed to be a permanent notice, and the law provides for a recorded cer-

tificate of location, which, after the period within which it is to be recorded, becomes the permanent notice of location, and inasmuch as such notice was recorded in due time and for more than one year prior to the attempted location of the Dixie, it was notice to the locators of the Dixie of the dimensions of the located Calamity No. 5 claim. *Sanders v. Noble*, 22 Mont. 110, 55 Pac. 1037; *Yosemite M. Co. v. Emerson*, 208 U. S. 25, 52 L. Ed. 374, 28 Sup. Ct. 96; *Armstrong v. Lower*, 6 Colo. 581.

Besides, our statute, sec. 4197, Rev. Stats. 1908, requires only that this preliminary notice shall contain the name of the lode, the name of the locator, and the date of discovery.

The instruction correctly stated the rule of law.

3. The court, after admitting all the testimony offered by defendants upon the plea of estoppel, withdrew the same from the jury by an instruction, and this is assigned as error.

The plea of estoppel is based upon the fact of the incorrect notice posted and above discussed, and upon certain alleged statements by Ward, one of the defendants in error, to plaintiffs in error to the effect that after Ward had learned of the defective notice, he had in substance told defendants that he would not claim beyond the 400 feet westerly from the discovery shaft.

This is denied by Ward, but it is contended that this was a question of fact for the jury.

It is undisputed that the defendants had staked out their Dixie claim before such alleged conversation. If it be admitted that Ward made such a statement after the location of the Dixie, it did not constitute an estoppel.

It is clear that he made no representation or concealment of fact; that defendants were not ignorant of the facts. The statement was not made with the intention that defendants should act upon it, for they had already acted; there was no word or act of Ward that could be construed as intended to work a fraud on defendants. The defendants were not induced to act upon such a statement. They had

staked their claim before the alleged conversation with Ward. To constitute an estoppel; these elements must appear. *Griffith v. Wright,* 6 Colo. 248.

The court very properly withdrew the question of estoppel from the jury.

The judgment is affirmed.

Garrigues, C. J., and Denison, J., concur.