FERRIS ET AL., APPELLANTS, *v.* McNALLY ET AL., RESPONDENTS.

(No. 3,042.)

(Submitted February 5, 1912. Decided February 15, 1912.)

[121 Pac. 889.]

*Mining Claims—Ejectment—Location—Prerequisites—Conflicting Claims—Rights of Parties—Costs—Appeal—Instructions— View by Jury—Estoppel—Harmless Error—Equity Cases— Findings—Extent of Review.*

Costs—Order Taxing—Appeal.
  1.  An appeal does not lie from an order taxing or refusing to tax costs; such an order is reviewable only on appeal from the judgment.
Mining Claims—Discovery—Rights of Locator.
  2.  Though actual possession of mineral land upon the public domain without a location is valid and will be protected against a mere intruder, it must yield to one who has connected himself with the govern-

ment by making discovery of mineral-bearing rock in place, and a valid location.

Same—Possession.

3. After making discovery and posting his notice of location of a quartz lode claim, the locator's rights are superior to those of subsequent locators for the time allowed to complete his location, whether he continues in actual possession or not.

Same—Location—Prerequisites.

4. To constitute a quartz lode location a valid one, there must have been a discovery and a compliance with the requirements of section 2283, Revised Codes.

Same—Conflict in Evidence—Verdict—Review.

5. Where the verdict in an action in ejectment was based on conflicting evidence and the jury, after hearing it, visited and viewed the premises in controversy, their finding is conclusive on appeal, as against the objection that the evidence is insufficient to support it.

Same—Rights of Senior and Junior Locators.

6. Subject to the limitation that, where one has made discovery of mineral-bearing rock in place and posted his notice of location, the rights of a subsequent locator upon the same ground during the time allowed to the former by section 2283, Revised Codes, for completing his location, are so far subordinated to those of the first that, to the extent the two are in conflict, the second is invalid, the rights of all persons to enter upon and make exploration of the public mineral lands with the purpose of making locations, are equal; and the one who first makes a discovery has the exclusive right to make the first location.

Same—Ejectment—Ouster.

7. Evidence in an action in ejectment *held* insufficient to show an ouster of plaintiffs from a quartz lode claim.

Instructions—Proper Refusal.

8. An instruction which assumes a fact in issue is properly refused.

Mining Claims—Ejectment—Who Entitled to Recover.

9. Plaintiffs, who were not in possession of a quartz lode claim which they sought to recover in an action in ejectment, were not entitled to a verdict except upon a showing of title in themselves, irrespective of what defendants had or had not done in the way of exploration or discovery; in such a case plaintiff can recover only upon the strength of his own title and not upon the weakness of that of defendant.

Same—Damages—Instructions—Harmless Error.

10. Where the jury in an action in ejectment found against plaintiffs on the main issue, any error in an instruction on the question of damages was harmless.

Same—Instructions—Excluding Evidence—Harmless Error.

11. Error in excluding evidence, through the medium of an instruction, which could not have assisted the jury in arriving at a conclusion, was not prejudicial.

Same—Development Work—What Ineffectual.

12. One who has failed to make a valid location of a quartz lode claim because of insufficient development work, cannot, after a second locator has made discovery, tack work performed after the second location to that previously done and thus render nugatory the discovery made by the latter.

Same—View by Jury—Estoppel to Allege Error.

13. In ejectment to recover possession of a mining claim, at a view of the premises by the jury, one of the jurors asked plaintiff to point

out the vein he claimed to have discovered. The plaintiff, though he had been explicitly cautioned not to communicate with the jury, shoveled away some loose material, and then stopped, being unwilling or unable to comply further. *Held,* that he was so far at fault himself as to be estopped to claim prejudice on the ground that the jury received evidence out of court.

Same—View by Jury—Harmless Error.

14. Alleged error in permitting loose material to be shoveled out of a cut made on a mining claim in controversy in an action in ejectment, while the jury were viewing the premises, was harmless where nothing more was discovered than the exact condition in which the cut was left at the time it was completed by appellants.

Appeal and Error—Review in Equity Cases—Findings—Instructions.

15. The findings of the jury in an equity case are advisory only, and, when approved by the trial court, will be deemed the findings of the court; hence errors in instructions and irregularities occurring in the presence of the jury will not be considered in determining the correctness of the findings.

*Appeal from District Court, Broadwater County; W. R. C. Stewart, Judge.*

ACTION by G. F. Ferris and another against M. J. McNally and another. From an order denying a new trial, and from an order overruling a motion to tax costs included in the judgment, plaintiffs appeal. Appeal from order to tax costs dismissed, and order denying new trial affirmed.

Cause submitted on briefs of counsel.

*Messrs. Galen & Mettler,* for Appellants.

*Messrs. Walsh & Nolan,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action in ejectment. The plaintiffs base their claim of title and right of possession to the ground in controversy upon an alleged location thereof as the Grotto quartz lode mining claim. It is alleged that a discovery was made thereon on January 16, 1909, and that the various steps required to complete the location were thereafter taken and the proper record made. Stripped of immaterial matters, the complaint alleges title, possession and right of possession in plaintiffs, an unlawful entry and ouster by

the defendants on December 10, 1909, and the withholding of possession by them since that date, to the damage of plaintiffs in the sum of $1,000. In their answer the defendants put in issue the material allegations of the complaint, and allege title in themselves. At the trial it was disclosed that they base their claim upon a location of the ground as the Silver Star quartz lode, made on November 6, 1909. The jury found a general verdict for the defendants. They also made two special findings, *viz.:* (1) That the cubical contents of the discovery cut on the Grotto were less than 150 feet; and (2) that no vein or deposit was disclosed therein. Judgment was entered accordingly. The plaintiffs have appealed from an order denying them a new trial. They have also attempted to appeal from an order overruling their motion to tax the costs included in the judgment.

1. It has been repeatedly held by this court that an appeal does not lie from an order taxing or refusing to tax costs. Such an [1] order, though it follows the judgment in point of time, is in theory an intermediate order reviewable only on appeal from the judgment. (*State ex rel. Pierson* v. *Millis,* 19 Mont. 444, 48 Pac. 773; *Murray* v. *Northern Pac. Ry. Co.,* 26 Mont. 268, 67 Pac. 625.) This being so, and there being no appeal from the judgment, the questions presented in connection with this feature of the case may not be examined. The attempted appeal from this order is therefore dismissed.

2. From the evidence it appears that the defendants entered upon the premises in controversy on November 6, 1909. At that time no one was in actual possession. Such possession as plaintiffs had was constructive. Therefore their right to recover depends upon the validity of the Grotto location through which they [2] claim title; for though actual possession of mineral land upon the public domain without a location is valid, and will be protected against a mere intruder (1 Lindley on Mines, 216–219; *Sparks* v. *Pierce,* 115 U. S. 408, 29 L. Ed. 428, 6 Sup. Ct. Rep. 102), it will not avail as against one who peaceably enters for exploration or makes a valid location. Exclusive right of possession can be acquired only by a compliance with the mineral laws

of the United States and the local laws, not inconsistent there-with, requiring discovery and location. (*Belk* v. *Meagher,* 104 U. S. 279, 26 L. Ed. 735; *Deffeback* v. *Hawke,* 115 U. S. 392, 29 L. Ed. 423, 6 Sup. Ct. Rep. 95; *Davis' Admr.* v. *Wiebbold,* 139 U. S. 507, 35 L. Ed. 238, 11 Sup. Ct. Rep. 628; *Belk* v. *Meagher,* 3 Mont. 65; *Russell* v. *Hoyt,* 4 Mont. 412, 2 Pac. 25; *Hamilton* v. *Huson,* 21 Mont. 9, 53 Pac. 101; 27 Cyc. 55.) Mere naked posses-sion must yield to the higher right acquired by one who has connected himself with the government.

It follows that one who, not having the actual possession, seeks to recover it from another, must show a superior right in himself, namely a valid location. The mineral lands of the United States [3] being free and open to exploration to all alike, one citizen has an equal right with every other to go upon and occupy them for that purpose. He will be protected in this right, and, after his discovery and the posting of his notice, the rights of others are subordinated to his, whether he continues in actual possession or not for the time allowed by the local laws of the state or terri-tory to complete his location. (*Sanders* v. *Noble,* 22 Mont. 110, 55 Pac. 1037; *Helena Gold & Iron Co.* v. *Baggaley,* 34 Mont. 464, 87 Pac. 455; *Erhardt* v. *Boaro,* 113 U. S. 527, 28 L. Ed. 1113, 5 Sup. Ct. Rep. 560; 27 Cyc. 560.)

The controversy at the trial, so far as plaintiffs are concerned, turned upon two questions of fact, *viz.:* (1) Whether they had made a discovery of mineral-bearing rock in place; and (2) whether they had done the amount of exploration work required by the statute to make their location valid. The evidence was in irreconcilable conflict upon both of these questions. While there was direct and positive testimony tending to show that in the open cut designated by plaintiffs as their discovery cut there was disclosed a vein several inches in thickness, bearing gold in pay-ing quantities, and several pieces of mineralized rock, alleged to have been taken from the cut, were exhibited to the jury, the testimony of defendants' witnesses tended as strongly to show that there was no disclosure of rock in place, or otherwise, of a mineral-bearing character. The same hopeless conflict is found

in the testimony touching the cubical contents of the discovery cut. The statute (Rev. Codes, sec. 2283) requires the locator to do his exploration work within sixty days after posting his notice. This may consist of a shaft sunk vertically at the point of discovery to the depth of at least ten feet from its lowest rim at the surface, or deeper if necessary to disclose the vein or deposit located, the cubical contents of which shall be not less than 150 feet, provided that it may consist of an open cut or tunnel which discloses the vein or deposit at a depth of at least ten feet below the natural surface of the earth, representing an excavation of at least 150 cubic feet; "provided, also, that where the vein, lode or deposit is disclosed at a less vertical depth than ten feet, any deficiency in the depth of the discovery shaft, cut or tunnel may be compensated for by any horizontal extension of such working, or by an excavation done elsewhere upon the claim, equaling in cubical contents the cubical extent of such deficiency; but in every case at least seventy-five cubic feet of excavation shall be made at the point of discovery."

It is not necessary to cite authorities to the point that without [4] a discovery there cannot be a valid location, nor to the point that a compliance with the requirements of the state statute is a necessary prerequisite. These, however, are in point: U. S. Rev. Stats., sec. 2320 (U. S. Comp. Stats 1901, p. 1424) ; *Sanders* v. *Noble, supra; Upton* v. *Larkin,* 7 Mont. 449, 17 Pac. 728; *Mares* v. *Dillon,* 30 Mont. 117, 75 Pac. 963; *Baker* v. *Butte City Water W. Co.,* 28 Mont. 222, 104 Am. St. Rep. 683, 72 Pac. 617; *Butte City Water W. Co.* v. *Baker,* 196 U. S. 119, 49 L. Ed. 409, 25 Sup. Ct. Rep. 211; *Chrisman* v. *Miller,* 197 U. S. 313, 49 L. Ed. 770, 25 Sup. Ct. Rep. 468.

The testimony of the defendants' witnesses tended to show that at the time the location of the Silver Star was made the cut was in the same condition as it was when the Grotto location was completed, that by actual measurement its cubical contents did not exceed eighty feet, and that no work in any substantial amount had been done elsewhere upon the claim. We shall not undertake to state and examine the evidence in detail. This would

serve no purpose other than to extend this opinion and demonstrate to counsel for plaintiffs that we have been as industrious in the examination of this case as they were in their preparation for its presentation to this court. We are content to leave them to presume that we have fully discharged our duty in this behalf. It is sufficient to say that it was the exclusive province of the jury to find the facts. Besides, having heard and observed the witnesses during the course of the trial, they subsequently, [5] in charge of the sheriff accompanied by the presiding judge, visited the premises in controversy. They thus had an opportunity to verify the statements of the witnesses as to any discovery made by plaintiffs, as well as to judge for themselves of the cubical contents of the excavation there made. Their conclusion cannot be reviewed by this court. Hence the principal contention made by counsel for the plaintiffs, *viz.,* that the evidence is insufficient to justify the verdict, must be overruled.

3. Counsel contend that the court erred in refusing to direct a verdict for the plaintiffs. This contention proceeds upon the assumption that, although the Grotto location was not shown by uncontradicted evidence to be completed and therefore valid, nevertheless the plaintiffs had an equal right with the defendants to occupy the ground covered by it, in order to complete their location pending the exploration being made by the latter, looking to the final location of the Silver Star claim. Until a discovery had been made by the defendants and notice of location posted, the right of the parties to go upon the ground was equal; for, upon the assumption that the plaintiffs had not made a discovery or complied with the statute by doing the necessary excavation work prior to the record of their location, the ground was, at the time of defendants' entry, still a part of the public domain and open to location. By discovery and the posting of [6] notice of claim the discoverer acquires a right to make a location to the exclusion of one who thereafter enters and makes a location pending the time allowed by the statute (Rev. Codes, sec. 2283) to complete the marking of the boundaries and the required excavation work. Under this condition, the rights of

the second locator are so far subordinated to those of the first that, to the extent the two locations are in conflict, the second is invalid. (*Sanders* v. *Noble, supra; Helena Gold & Iron Co.* v. *Baggaley, supra; Street* v. *Delta Min. Co.,* 42 Mont. 371, 112 Pac. 701.) Subject to this limitation, the rights of all persons to enter upon and make explorations of the public mineral lands with the purpose of making locations upon them are equal, and the one who first makes a discovery has the exclusive right to make the first location. (*Hanson* v. *Craig,* 170 Fed. 62, 95 C. C. A. 338.) It must, therefore, follow, as counsel contend, that, if during the continuance of the common occupancy one person. ousts another from his *possessio pedis,* the law will restore such other to his possession.

The evidence shows that the defendants posted their notice on [7] November 6, 1909. They thereafter continued work until, as they claim, they finally completed their location. During the latter part of November or the early part of December, plaintiffs employed a miner to do excavation work in the Grotto discovery cut. At the suggestion of defendant McNally that there would probably be litigation over the respective rights of plaintiffs and defendants because of their conflicting locations, and it would be best to leave the excavation as it then was, the work was discontinued. About the same time the plaintiffs employed another miner to do the work at the same place. While so engaged, he shoveled out from an old excavation near by about 250 pounds of material which had been shoveled into it during the process of excavation of the discovery cut. At the instance of defendant McNally this miner also stopped work. So far as the record shows, there was neither threat of violence nor coercion. On the contrary, the evidence tends to show rather that plaintiffs acquiesced in the stopping of the work at this point, and that, instead of suffering an unlawful ouster at the hands of defendants, the plaintiffs were content to rest their claims exclusively upon the Grotto location and abide the consequences, being entirely willing at the suggestion of McNally to allow the physical conditions as they were to stand undisturbed as the evidence

of their rights. "An ouster is a wrongful dispossession or exclusion of a party from real property who is entitled to the possession." (Anderson's Law Dictionary.) The evidence referred to falls far short of showing any wrong on the part of the defendants, except upon the assumption that the Grotto location was valid, whereas its validity was the vital issue in the case. There is no evidence tending to show that the plaintiffs were excluded from working at any other point within the boundaries of the Grotto location, or that they were even requested to abstain from work. Furthermore, the plaintiffs were not upon the ground asserting the right to complete their exploration work, but were asserting an exclusive right to possession under the Grotto location.

4. Complaint is made that the court erred in refusing plaintiffs' requested instructions 7 and 8, and in giving instructions 1 and 3, as follows:

"No. 7. You are instructed that the defendants would have no right as against the plaintiffs in this case until they had first made a valuable discovery of mineral upon the ground in controversy, and that they must establish the fact of such discovery by a preponderance of the evidence." (Refused.)

"No. 8. You are further instructed that, if you find that the plaintiffs fully complied with the law in locating the Grotto lode before any discovery was made of valuable mineral thereon by the defendants, then such discovery by said defendants, even if you believe it to have been made by them, would give them no rights as against the plaintiffs, and you must find for the plaintiffs." (Refused.)

"No. 1. In this case a controversy exists between the plaintiffs and defendants for the ground which was located by the plaintiffs as the Grotto and located by the defendants as the Silver Star, and the only questions material for you to consider in connection with this controversy, aside from damages in case you find for plaintiffs, are whether the plaintiffs in connection with their location of the ground performed such discovery work as the law requires, and whether they discovered a vein, lode or

deposit so as to authorize its location by them as mineral."
·(Given.)

"No. 3.  In this case there is no evidence that work was done
elsewhere than at the point of discovery before the attempted
location by the defendants, and, unless the plaintiffs have estab-
lished by a preponderance of the evidence that the cubical
contents of the cut or excavation made by them was 150 feet or
more, then your verdict should be for the defendants."
(Given.)

Plaintiffs' request numbered 7 was properly refused. It
[8] involves the assumption that the plaintiffs' location was
valid, whereas, as already said, this was the vital issue to be
determined by the jury.

It assumes, also, that plaintiffs were entitled to a verdict
solely upon the ground that they had attempted to make the
[9] Grotto location, unless the defendants had shown by a
preponderance of the evidence that they had made a discovery at
the time they posted their notice.  The plaintiffs, not being in
possession at the time of defendants' entry, could not recover
except upon a showing of title in themselves by a preponderance
of the evidence, without regard to what the defendants had done
in the way of exploration and discovery.  Plaintiffs could re-
.cover only upon the strength of their own title, and not upon the
weakness of that of defendants.

Nor was there error in the refusal of plaintiffs' request num-
bered 8.  As an abstract proposition of law we think it is correct,
the word "valuable" appearing therein, which is the subject of
criticism by counsel for defendants, not being misleading in
view of the definition of the terms "vein," "lode," and "de-
posit" as given by the court in another instruction.  The issues
upon which the jury were required to find, apart from that of
damages, were whether the plaintiffs had made a discovery, and
had done the necessary work to complete the Grotto location.
In other instructions they were told that, if they found both
these issues for plaintiffs, their verdict should be returned ac-
cordingly, and that it should include such amount of damages

as they thought the plaintiffs entitled to under the evidence. It seems impossible that under this condition of the instructions the plaintiffs were prejudiced by the refusal of this request.

The criticism of instruction No. 1, as given, is that it withdrew from the jury the question of damages. This complaint is without merit. The instruction speaks for itself. Inasmuch as the jury found against the plaintiffs on the main issue, it was not necessary for them to consider the question of damages. Even so, at the proper place in the charge the court told the jury that, if they found the main issue for the plaintiffs, they should also include in their verdict damages in such amount as the evidence justified.

It is said of instruction No. 3 that the court erred in telling the jury that there was no evidence that excavation work had been done at any other place than at the point of discovery before the "attempted location by the defendants." A careful reading of the evidence shows this statement to be substantially true. The only evidence tending to show that plaintiffs had done any work other than that done in the discovery cut was that referred to above, which consisted in the shoveling out of the old excavation 250 pounds of material. The evidence elsewhere showed that most of the débris taken from the cut had been thrown into this excavation. At best, the work was not new, but was confined merely to moving a second time the débris originally taken out. But aside from this, there was no statement by any witness as to the cubical contents of the resulting excavation. The evidence was therefore not of such a character as to aid the jury in making up their conclusion. Hence the court did not err in excluding it, as it impliedly did in the instruction complained of. But, aside from these considerations the work in question was done after the date at which the defendants testified they had made their discovery and posted their notice. Assuming that these acts had been done by them, the plaintiffs, not having theretofore made a valid location, could not tack work then done to that theretofore performed, and thus render nugatory the discovery made by defendants.

5. The trial was concluded on March 9, 1910. At the close of the evidence the judge with the jury in charge of an officer went to view the discovery cut upon the Grotto claim. The plaintiff Ferris was present, as was also defendant McNally. The latter had one Gleason to shovel out of the cut such debris as had fallen into it during the previous winter. Whether this work was ordered by the judge does not appear. After the work was done, one of the jurors requested Ferris to point out the vein or lead about which he had testified. Ferris thereupon got into the cut, but, after moving some loose material therefrom with a shovel, stopped work, and did nothing further, being unable or unwilling to respond to the juror's request. Contention is made that the plaintiffs suffered prejudice in that the jury received evidence out of court. The statute (Rev. Codes, sec. 6747) permits the jury to have a view of the property which is the subject of litigation, or of the place at which any material fact occurred. The purpose of the provision is to enable the jury to apply the testimony of the witnesses to the observed conditions about which they have spoken, and also to determine the truth of statements made by them with reference to these conditions. (*Ormund* v. *Granite Mt. Min. Co.*, 11 Mont. 303, 28 Pac. 289.) Otherwise the inspection would be a mere idle ceremony without any useful purpose. The incident complained of, though perhaps irregular in view of the provision of the statute that the persons appointed by the court to attend the jury on behalf of the parties, may not communicate with them further than to point out the property or the place at which any material fact occurred, and that no other person shall speak to them on [13] any subject connected with the trial, yet, under the circumstances, the plaintiff Ferris was so far at fault by taking part in it that he cannot allege prejudice. As appears from the affidavit of plaintiff's counsel, Ferris had been given explicit instructions not to communicate with the jury or make any statement in their presence. He was not under any obligation to respond to the request of the juror. In view of the advice of his counsel, he must have known this. So, therefore, whether

he was unable to respond or changed his mind and for that reason refused to do so, he cannot complain that the jury, perhaps, interpreted his silence against him.

With reference to the work done by Gleason in shoveling the loose material out of the discovery cut, it may be said that this [14] could not possibly have prejudiced the plaintiffs, for the reason that it disclosed to the jury exactly the condition in which the cut was at the time it was completed by the plaintiffs.

We have disposed of this case as one at law. Counsel for plaintiffs insist in their briefs that it is equitable in character in the nature of an action to quiet title. If we accept this as the proper theory and apply to it the liberal mode of review applicable to cases in equity, the questions arising upon the instructions as well as the incident attending the inspection made by the jury [15] become wholly immaterial. The findings of the jury are, in equity cases, to be viewed as the findings of the judge and as emanating from him. Therefore errors in the instructions, as well as irregularities which may have occurred in the presence of the jury, are not to be taken into consideration in determining the propriety of the findings. The office of the jury in such cases is merely advisory. (*Lawlor* v. *Kemper,* 20 Mont. 13, 49 Pac. 398; *Power* v. *Lenoir,* 22 Mont. 169, 56 Pac. 106; *Wetzstein* v. *Largey,* 27 Mont. 212, 70 Pac. 717.) Any error committed by the court in submitting the case to them is deemed to have been corrected by the judge when he came to consider the adoption of their findings.

The order is affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.

Rehearing denied March 4, 1912.