O'MALLEY, APPELLANT, *v.* O'MALLEY, RESPONDENT.

(No. 3,203.)

(Submitted January 9, 1913. Decided January 25, 1913.)

[129 Pac. 501.]

*Marriage and Divorce—Dower—Common-law Marriage—Cohabitation — Evidence — Insufficiency—Jury—Peremptory Challenges—Waiver—Equity Cases—Findings—Conclusiveness.*

Trial—Peremptory Challenges—Waiver.
  1.  Where a party plaintiff had used two of his four peremptory challenges (Rev. Codes, sec. 6740), and waived his third and fourth, he was not thereafter entitled to challenge the juror placed in the box to fill the vacancy occasioned by the exercise of defendant's fourth challenge.

Same—Equity Cases—Harmless Error.
  2.  Since in an equity case the verdict and findings of the jury are advisory merely, subject to be disregarded by the trial court, any error committed in its selection is harmless.

Absolute Divorce—Bars Dower.
  3.  A decree of divorce, absolute on its face and duly entered by a court of competent jurisdiction, bars the subsequent assertion of dower.

Equity Cases—Findings—Conclusiveness.
  4.  The findings of the jury in an equity case as adopted by the trial court are conclusive on appeal, where the evidence does not disclose a decided preponderance against them.

Common-law Marriage—Cohabitation Necessary.
  5.  An indispensable element to the existence of a common-law marriage, or of the "mutual and public assumption of the marital relation" (Rev. Codes, sec. 3607), is cohabitation.

Same—Evidence—Insufficiency.
   6.  Evidence reviewed and *held* insufficient to show a common-law
   marriage, *i. e.*, the cohabitation necessary to establish a mutual and pub-
   lic assumption of the marital relation.

*Appeal from District Court, Park County; Frank Henry,
Judge.*

ACTION by Mary O'Malley against John O'Malley to recover
her alleged dower interest in certain real estate.  Judgment for
defendant.  From an order denying her motion for a new trial,
she appeals.  Affirmed.

*Mr. Frank Arnold,* for Appellant, submitted a brief and
argued the cause orally.

Our position is that the decree of divorce after seisin did not
take away or destroy the dower right of plaintiff.  Under the
common law it was the duty of the husband to support the wife
during his lifetime; for her further support after his death there
was her dower interest in his lands for the rest of her natural
life.  Under our statute it is the duty of the husband to support
the wife, and in addition she is endowed of the third part of
all lands whereof he was seised of an estate of inheritance at
any time during marriage—not for the term of her natural life,
but in fee.

We take the position that the right of dower is expressly pre-
served by the words of section 3708, Revised Codes: "  *  *  *
Unless the same shall have been relinquished in legal form.  When
a wife joins with her husband in any conveyance of land she
thereby relinquishes her inchoate right."  In *Dahlman* v. *Dahl-
man*, 28 Mont. 373, 72 Pac. 748, it is said that relinquishment in
legal form may be done only by her deed executed and duly ac-
knowledged in conformity with the law, or by the acceptance
by her of a devise or bequest under the will of her husband, or
by a jointure settled upon her with her consent by her husband
before the marriage.  There has been no deed, no devise and no
jointure.  Therefore, expressly under the provisions of section
3708, there has been no relinquishment.

The contention is that plaintiff is not the widow of deceased, having been divorced. Did the statute read, "wife shall be endowed," the contention would then be that she was not the wife, having been divorced. But there is little to be gained by dwelling on the word "widow." "In the absence of statutory provision to the contrary, when the wife's inchoate dower right has once attached, it cannot be devested except by some act of her own, done according to the forms and in the manner prescribed by statute. Any subsisting claim or encumbrance existing before the inception of the wife's interest which would have defeated the husband's seisin will be a bar to her dower; but the wife's right remains unaffected by any act of the husband subsequent to the marriage." (14 Cyc. 929.)

One of the earliest cases in which this question arose is that of *Wait* v. *Wait*, 4 N. Y. 95. In the decision of the court of appeals of New York it was held that a wife was not to be deprived of her right of dower in her husband's real estate by a divorce from the bond of matrimony for his fault; that the legislature of New York, by expressly enacting that "in case of divorce dissolving the marriage contract for the misconduct of the wife, she should not be endowed," had manifested an intention that she should retain her right of dower in case of divorce for the misconduct of the husband. The New York statute in force at that time was as follows: "A widow shall be endowed of the third part of all the lands whereof her husband was seised of an estate of inheritance at any time during the marriage." Then follows the section above quoted. The court disregarded the technical meaning of the word "widow," and took the position that for the fault of the husband the wife, be she widow or divorcee, did not lose right of dower. There is no reason why our statute should not be construed in the same way, and there is every reason why it should, for it has been well said, "Dower is a favorite of the law." Our statute deals not with intentions or reservations, but distinctly says that she shall be endowed unless she has relinquished it in legal form. (See, also, *Van Cleaf* v. *Burns,* 118 N. Y. 549, 16 Am. St. Rep.

782, 23 N. E. 881; *Alt* v. *Banholzer,* 39 Minn. 511, 12 Am.. St. Rep. 681, 40 N. W. 830.)

This question of dower is discussed and dower and alimony distinguished in the case of *Adams* v. *Storey,* 135 Ill. 448, 25 Am. St. Rep. 392, 11 L. R. A. 790, 26 N. E. 582, under a statute similar to our own. In Illinois the word "wife" is used in the statute instead of the word "widow." Otherwise there is little difference between the statute of that state and the statute of this. The court held the right of a wife to be. endowed of the third part of all the lands whereof her deceased husband was seised of an estate of inheritance at any time during the marriage continued after the divorce, unless she voluntarily relinquished.

The appellant, in her second cause of action, relies on a second marriage, properly solemnized, and if not solemnized, then on what is generally termed "common-law" marriage, or, as our statute states it, "a public assumption of the marital relation," her belief that the marriage was solemnized, and the fact that she and Mr. O'Malley cohabited together as husband and wife. Now, was there a mutual and public assumption of the marriage relation? Several witnesses testified to the fact that on different occasions, after the ceremony by Father Blaere, Michael O'Malley visited with Mary O'Malley at all hours of the. day and night, and Mrs. O'Malley so testified, and that on a great many occasions he cohabited with her at her home; that he visited her continually for a number of years at her residence; and that he bought her food and clothing. In *Sharon* v. *Sharon,* 75 Cal. 1, 16 Pac. 345, it is held that under the provision of section 55, California Civil Code, "it is not necessary to the validity of the marriage that the relation of the parties be made public, but evidence of consent by giving proof of cohabitation is sufficient to show a mutual assumption of the marital rights and duties." The law does not require that in order that there be. a public assumption that the town-crier shall be sent out to announce the fact, or that it shall be published in the daily or

weekly newspaper. We have been unable to find any construction of the words "public assumption," but the supreme court of California has defined the words "public acknowledgment." (*In re Jessop's Estate,* 81 Cal. 408, 21 Pac. 976, 22 Pac. 742, 1028.)

*Mr. H. J. Miller,* for Respondent, submitted a brief; *Mr. J. F. O'Connor,* of counsel, argued the cause orally.

The principle of law that there can be no right of dower where there is no subsisting marriage at the time of the husband's death is elementary. (See Bishop on Marriage and Divorce, secs. 706, 708.) The supreme court of the United States in *Barrett* v. *Failing,* 111 U. S. 523, 28 L. Ed. 505, 4 Sup. Ct. Rep. 598, sustained a demurrer to a complaint alleging practically the same facts as are stated in plaintiff's first cause of action. (See, also, *Barber* v. *Root,* 10 Mass. 260; *Hood* v. *Hood,* 110 Mass. 463; *Rice* v. *Lumeley,* 10 Ohio St. 596; *Lamkin* v. *Knapp,* 20 Ohio St. 454; *Gould* v. *Crow,* 57 Mo. 200; 14 Cyc. 934.) The rule laid down in 10 American and English Encyclopedia of Law, second edition, page 200, thus: "The general rule is that the wife's right to dower in the husband's lands is barred by a divorce *a vinculo matrimonii,* but the wife is not debarred of her dower by a divorce *a mensa et thoro.*" The case of *Wood* v. *Wood,* 59 Ark. 441, 43 Am. St. Rep. 48, 28 L. R. A. 157, 27 S. W. 641, is one of the leading cases on this subject, and it lays down the rule, without a qualification: "That at common law, and unless otherwise ordained by statute, a divorce absolutely bars the right of dower." The language used by the court which is pertinent to this subject is as follows: "To entitle a party to dower, she must be the wife at the death of the husband. A divorce from the bonds of matrimony bars the claim of dower." (*Frampton* v. *Stevens,* L. R. 21 Ch. D. 164; *McCraney* v. *McCraney,* 5 Iowa, 241, 68 Am. Dec. 702; *Gleason* v. *Emerson,* 51 N. H. 405; *Day* v. *West,* 2 Edw. Ch. 596; *Reynolds* v. *Reynolds,* 24 Wend. (N. Y.) 196.)

Again, the case is *res judicata.* In the case of *Roe* v. *Roe,* 52 Kan. 724, 39 Am. St. Rep. 370, 35 Pac. 808, the court says: "If a divorce is granted, it operates as an absolute dissolution

of the marriage ties. Whatever orders, with reference to alimony or a division of the property are desired by either party, will then be considered and determined by the court. If they may be so considered and determined and a party neglects to require such determination, the judgment is as full and complete a bar as if the question had been fully tried and determined." Consequently, in the case at bar, the same property rights could be determined between the parties, and if they were not so determined, the judgment acts as a complete bar, as if all of the property rights had been determined.

The evidence is insufficient to show a common-law marriage. In *Hinckley* v. *Ayres,* 105 Cal. 361, 38 Pac. 735, it was held that where parties lived together occasionally from April, 1880, until October, 1882, in the same house, but were not known by their friends as husband and wife, the evidence was insufficient to show a mutual assumption of marital rights, duties or obligations. The same court in the case of *People* v. *Lehmann,* 104 Cal. 634, 38 Pac. 422, holds the evidence insufficient to sustain a common-law marriage where the parties were registered at the hotel as man and wife, where they slept together as man and wife and were introduced as man and wife. Again, in the case of *Harron* v. *Harron,* 128 Cal. 303, 308, 60 Pac. 932, where the evidence was to the effect that the plaintiff entered into an agreement of marriage and they had slept together frequently following the agreement but they did not have a common home, and that he was introduced as her husband in his presence, the court held the evidence insufficient to constitute a common-law marriage.

MR. JUSTICE SANNER delivered the opinion of the court.

In this action the appellant seeks to have herself declared the owner of a one-third part of certain real estate as dower.

The complaint is in two causes of action. In the first she pleads that she and one Michael O'Malley were married in April, 1903, and remained husband and wife until November 26, 1904, when they were divorced; that during the coverture Michael O'Malley was seised of certain lots in the city of Liv-

ingston, which he conveyed, on April 1, 1905, to the respondent, she not joining in the conveyance; and that Michael O'Malley died in January, 1911. In the second cause of action it is alleged that she and Michael O'Malley, on February 21, 1905, "entered into a legal contract of marriage each with the other, and did on said date and at said time actually intermarry pursuant to the terms of said contract and consent to become husband and wife; that said contract and marriage so entered into between said plaintiff and Michael O'Malley was thereafter followed by a solemnization and by a mutual and public assumption of the marital relation, and said plaintiff and Michael O'Malley thereafter and up to and until the death of said Michael O'Malley cohabited and lived together as husband and wife"; that during the period of this marriage Michael O'Malley was seised of the lots referred to in the first cause of action, which were conveyed on April 1, 1905, by him to respondent without her joinder or consent.

The answer admits the first marriage, the ownership of the lots by Michael O'Malley up to April 1, 1905, the conveyance to the respondent, and the death of Michael O'Malley; denies all the other substantial allegations of the complaint, and, by way of affirmative defense, pleads the decree of divorce entered on November 26, 1904. The case was tried to the court sitting with a jury, which returned a general verdict and special findings in favor of respondent, and judgment was entered accordingly. The appellant moved for a new trial, which was denied, and from the order denying her motion for a new trial she prosecutes this appeal. Twelve alleged errors are specified, but, as will be seen in the sequel, only three questions are presented:

1. After the appellant had used two of her peremptory [1] challenges she waived her third and fourth. Respondent then exercised his fourth, and in the place thus vacated the juror Ebert was called. Thereupon appellant sought and was denied a peremptory challenge as to Ebert and assigns this denial as error. There is nothing in this assignment. So far as the record discloses, the proceeding was in substantial conformity with section 6740 of the Revised Codes, and the question presented

is essentially settled by the decision of this court in *State* v. *Peel,* 23 Mont. 358, 75 Am. St. Rep. 529, 59 Pac. 169. Moreover, this was an equity case; the appellant was not, as a matter [2] of right, entitled to have it tried to a jury, and the verdict and findings were advisory merely, subject to be disregarded by the court. Under these circumstances it would be of no vital consequence if error were committed in its selection. (*Ferris et al.* v. *McNally et al.,* 45 Mont. 32, 121 Pac. 889.)

2. By the first cause of action, the essential allegations of which are undisputed, the question is raised whether a decree [3] of divorce, absolute on its face and duly entered by a court of competent jurisdiction, bars the subsequent assertion of dower. Upon first impression the mere statement would seem to carry its own answer; but such has not always been the case. Lord Coke tells us: "It is necessary that the marriage do continue, for if that be dissolved the dower ceases; *ubi nullum matrimonium, ibi nulla dos.* But this is to be understood when the husband and wife are divorced *a vinculo matrimonii,* as in case of precontract, consanguinity, affinity, *etc.,* and not *a mensa et thoro* only, as for adultery." (Coke on Littleton, sec. 32a.) In an interesting discussion in Scribner on Dower, Chapter XIX, where the early American authorities are collated, we learn that these words are to be taken to mean that in cases where under the modern procedure there would be an annulment of the marriage, there would be no dower, but that where under the modern procedure a divorce would result, the contrary is the rule indicated by Coke. (*Wait* v. *Wait,* 4 Comst. (N. Y.) 95.) Whether or not the modern rule arose upon a misconception of the effect of Coke's *dictum,* no doubt exists as to what that rule is, and that by the great weight of authority it is to the effect that a divorce absolute in the modern sense is a bar to the subsequent assertion of dower. (*Day* v. *West,* 2 Edw. Ch. 592; *Whitsell* v. *Mills,* 6 Ind. 229, 231; *Barrett* v. *Failing,* 111 U. S. 523, 28 L. Ed. 505, 4 Sup. Ct. Rep. 598; *Wood* v. *Wood,* 59 Ark. 441, 43 Am. St. Rep. 48, 28 L. R. A. 157, 27 S. W. 641; Bishop on Marriage and Divorce, secs. 706, 708; 14 Cyc. 934; 10 Am. & Eng. Ency. of Law, 2d ed., 200.)

Indeed, we think the matter is settled by the language of our statutes, without any authorities. Section 3708, Revised Codes, reads: "A *widow* shall be endowed," *etc.* The word "widow" is as old as the language itself. Colloquially as well as among the learned, in courts as well as out of them, it has always meant "a woman who has lost her husband by death," and never, outside of slang and then only with a semi-contemptuous prefix, has it had any application to divorced persons. Section 3642 provides: "The effect of a judgment of divorce is to restore the parties to the state of unmarried persons." If this means anything at all, it means just what it says, and its consequence is that she who was a wife ceases, upon the rendition of a decree of divorce, to have any husband. If, then, only a widow is endowed under the statute, and if, to be a widow, a woman must lose a husband by death, and if a divorced woman has no husband to lose, it is quite obvious from the statutes alone that she can assert no dower after a divorce. We see nothing in *Dahlman* v. *Dahlman,* 28 Mont. 373, 72 Pac. 748, or in section 3623 of the Revised Codes, cited by appellant, that militates with this view, and the fact, if it be a fact, that the innocent wife, driven to court by the sins of her husband, is thus placed at a disadvantage, is a consideration to be addressed to a co-ordinate department of this state government.

3. In her second cause of action the appellant alleges that the conveyance to the respondent was made while she was in fact the wife of Michael O'Malley by virtue of a second marriage duly solemnized, or, if not solemnized, then by what is generally termed a "common-law marriage," or, as our statute puts it, "a mutual and public assumption of the marital relation." (Rev. Codes, sec. 3607.)

The solemnization of the second marriage is supposed to have occurred on the occasion of the visit by Father Blaere to the bedside of Michael O'Malley when Michael O'Malley was sick and thought likely to die. The appellant testified to a solemnization by Father Blaere; but Father Blaere, when called as a witness in her behalf, testified distinctly and clearly that there was no license and no solemnization; what he did do, he

says, was to prepare the sick man for death in accordance with the rites of his church, and in the course of it he merely blessed the former marriage which had not been sanctioned by. the church; he considered them already married, because his church did not recognize the divorce as a severance of the tie. This court will not undertake to decide between these witnesses; but [4] upon settled principles will uphold the finding of the jury as adopted by the trial court: that there was no solemnization. (*Boyd* v. *Huffine,* 44 Mont. 310, 120 Pac. 228.)

The only evidence of mutual consent of the parties to the alleged second marriage is contained in appellant's narrative of the proceedings before Father Blaere and necessarily involved in his denial. But assuming that there was a mutual consent, did the appellant made out a *prima facie* case of "mutual and public assumption of the marital relation"? We think not. [5] Counsel have been unable to furnish this court with any authorities specifically construing this phrase, perhaps because the words are their own interpreter. To us it means a course of conduct on the part of both man and wife toward each other and toward the world, as that people generally would take them to be married. Indispensable to this is cohabitation; and we say with the supreme court of California that "by cohabitation is not meant simply the gratification of the sexual passions, but to live or dwell together, to have the same habitation, so that where one lives and dwells there does the other live and dwell also." (*Kilburn* v. *Kilburn,* 89 Cal. 50, 23 Am. St. Rep. 447, 26 Pac. 636; *Yardley's Estate,* 75 Pa. 207; *Sharon* v. *Sharon,* 79 Cal. 670, 22 Pac. 26, 131; *Hinckley* v. *Ayres,* 105 Cal. 357, 38 Pac. 735.)

Turning, now, to the evidence on behalf of appellant only, we find that after the alleged second marriage Michael O'Malley [6] and the appellant never lived together but maintained separate abiding places; that he visited her in her own house with more or less frequency, sometimes staying overnight, and when he did so the parties occupied the same bed; that this continued for a period of over two years, after which she moved away and the parties never even visited; that only once did she

ever sleep with him in his own house; that he bought her supplies and gave her money; that he told two persons that she was his wife, and to others he referred to her as his wife. It is unnecessary to go into the matter at greater length. Suffice it to say, the evidence is far short of establishing that consistent and public course of conduct toward each other as husband and wife, that "treatment of each other in the usual way with married people," that cohabitation, which we hold to be necessary to constitute a mutual and public assumption of the marital relation. (*Hinckley* v. *Ayres, supra.*)

In this view of the case the other errors assigned are of no consequence. The verdict and findings of the jury as adopted by the court are justified by the evidence, and the motion for a new trial was properly denied. The order is accordingly affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

