**Siller Tiger DANIELS, Plaintiff in Error,**

v.

**Johnnie MOHON, Special Administratrix of Estate of Dominic Daniels, Defendant in Error.**

**No. 38369.**

Supreme Court of Oklahoma.

Jan. 12, 1960.

Rehearing Denied March 8, 1960.

Second Petition for Rehearing Denied April 12, 1960.

W. F. Semple, and Melone, Robertson & Melone, Tulsa, for plaintiff in error.

L. R. Stith, Fairfax, for defendants in error.

WILLIAMS, Vice Chief Justice.

The parties are referred to as they appeared in the trial court.

Plaintiff is a full-blood Creek and Euchee Indian. Defendant was a full-blood Osage Indian. After the filing in this court of petition in error of plaintiff, defendant died. The cause has been revived as to defendant in the name of special administratrix of his estate, Johnnie Mohon.

Plaintiff filed this action on October 8, 1956, for separate maintenance, alleging that plaintiff and defendant entered into a common-law marriage in March, 1948, and that they lived together as husband and wife until some time in May, 1948.

Plaintiff testified that she and defendant agreed to assume a husband and wife rela-

tionship, and in furtherance of such agreement lived together as husband and wife at a rooming house in Hominy, Oklahoma, during the months of March, April and May, 1948. She testified further that defendant ceased living with her in May, 1948, and that they have not since that time lived together as husband and wife. Another witness for plaintiff testified that defendant stated in the presence of witness, that plaintiff was his wife, and that plaintiff and defendant slept together in the house of the father of witness on one occasion during the period of the alleged marriage. Another witness, through an interrogatory, stated that she lived at the same rooming house during this period and that plaintiff and defendant lived at said rooming house as man and wife, and that their reputation in the community was that of man and wife. A summary of plaintiff's testimony is that she and defendant agreed to enter into a marriage relationship and lived together nights some two months at a rooming house in Hominy. Other evidence tended to show that the alleged marriage was consummated by cohabitation; that defendant acknowledged this alleged marriage before three persons; and (as two of the witnesses testified) that the parties' reputation in the community was that of man and wife.

Prior to the filing of this action, defendant suffered a stroke and as a result was paralyzed and unable to appear and testify in person in his own behalf.

A witness for defendant, the manager of a hotel and bus company ticket agent in Fairfax, Oklahoma, testified that defendant was living at the hotel managed by witness during the year 1948, including the months of March, April and May, and that defendant did not leave the hotel except for trips of two or three days duration to Pawhuska, Hominy and Tulsa.

A grand-niece and adopted daughter of defendant testified that she saw defendant practically every day in Fairfax, Oklahoma, during the period of the alleged marriage; that he did not stay away from Fairfax for more than two or three days at a time;

and that none of the defendant's relatives ever told her of the alleged marriage.

Another witness, daughter of the woman who ran the rooming house referred to above, and also related to defendant, testified that she visited her mother at the rooming house often during this period at some of which times she saw the defendant, but did not see the plaintiff; that defendant never stayed at the rooming house, which was owned by defendant's aunt, more than three or four days; and that defendant would always return to Fairfax.

Other witnesses for defendant testified that they had never heard from defendant or any of his (defendant's) relatives that defendant was married to plaintiff.

As shown above, there was conflicting testimony as to whether plaintiff and defendant, in consummation of the alleged marriage agreement, ever lived or cohabited together as husband and wife. Offsetting the testimony of plaintiff and her corroborating witnesses is the testimony of other witnesses that defendant was living in Fairfax at the time in question and was not absent from his hotel for more than two or three days at a time.

The trial judge found that the evidence failed to prove that any legal common-law marriage was ever established by plaintiff with defendant. Plaintiff appeals from refusal of trial court to grant her a new trial.

Plaintiff in error presented her argument in four assignments of error:

1. The fact of marriage being proven, the law raises a presumption as to its validity and to overcome that presumption the proof must be strong and convincing.

2. All testimony on behalf of defendant relating to marriage was hearsay.

3. The court below erred in admitting self-serving declarations.

4. The trial court was not justified in saying that because of his own knowledge of the witness, Cass, he would not give other than slight weight, if any credibility, to his testimony.

■ The first proposition is based on the assumption that plaintiff has proven a

common-law marriage. Common-law marriages are recognized in this jurisdiction. In re Love's Estate, 42 Okl. 478, 142 P. 305, L.R.A.1915E, 109. To constitute a valid common-law marriage there must be "an actual and mutual agreement to enter into a matrimonial relation, permanent and exclusive of all others, between parties capable in law of making such a contract, consummated by their cohabitation as man and wife, or their mutual assumption openly of marital duties and obligations." Bothwell v. Way, 44 Okl. 555, 145 P. 350.

The Supreme Court of Montana in O'Malley v. O'Malley, 46 Mont. 549, 129 P. 501, 503, said:

"Indispensable to this is cohabitation; and we say with the Supreme Court of California that 'by cohabitation is not meant simply the gratification of the sexual passions, but to live or dwell together, to have the same habitation, so that where one lives and dwells there does the other live and dwell also.' Kilburn v. Kilburn, 89 Cal. 46, 50, 26 P. 636, 637, 23 Am.St. Rep. 447; Yardley's Estate, 75 Pa. 207; Sharon v. Sharon, 79 Cal. 633, 670, 22 P. 26, 131; Hinckley v. Ayres, 105 Cal. 357, 38 P. 735.

"Turning now to the evidence on behalf of appellant only, we find that after the alleged second marriage Michael O'Malley and the appellant never lived together but maintained separate abiding places; that he visited her in her own house with more or less frequency, sometimes staying overnight, and when he did so the parties occupied the same bed; that this continued for a period of over two years, after which she moved away, and the parties never even visited; that only once did she ever sleep with him in his own house; that he bought her supplies and gave her money; that he told two persons that she was his wife, and to others he referred to her as his wife. It is unnecessary to go into the matter at greater length. Suffice it to say the evidence is far short of establishing that consistent and public course of conduct towards each other as husband and wife, that 'treatment of each other in the usual way with married people,' that cohabitation which we hold to be necessary to constitute a mutual and public assumption of the marital relation. Hinckley v. Ayres, supra."

With regard to the meaning of the term "cohabitation" we said in In re Miller's Estate, 182 Okl. 534, 78 P.2d 819, at page 827:

"There is some evidence of cohabitation at plaintiff's rooming house; there is also some evidence to the contrary. The testimony that the parties occupied the same room or bed overnight when visiting the farms near Shawnee is of little or no value as circumstantial evidence of a marriage contract. Such acts do not constitute cohabitation as that term is employed in connection with the question of informal marriage. With respect to such a marriage, the word implies and means a living or residing together of a man and woman ostensibly as husband and wife, and ordinarily carries with it the idea of a fixed residence, 11 C.J. 951, 952; and does not contemplate a casual sojourning together."

Upon careful review of the record in this case we are of the opinion that there was sufficient evidence to sustain the judgment of the trial court determining that no common-law marriage was ever established and that such judgment is not clearly against the weight of the evidence.

■ The second and third assignments of error are based on the questioning of defendant's witnesses as to whether they had ever heard from defendant or any of his relatives at any time that defendant was married to plaintiff. No contention is made that defendant's evidence as to the lack of "cohabitation" by the parties is incompetent. In cases tried to the court, where complaint is made that incompetent evidence was admitted, unless it is shown that such evidence was considered and used by

the court in arriving at its judgment, no reversible error is presented. In re Miller's Estate, supra.

The fourth proposition concerns a statement said to have been made by the trial judge regarding one of plaintiff's witnesses at the time of ruling on the motion for new trial. This statement is not shown in the transcript. The statement, if made, was concerning the credibility of such witness based on the trial judge's own opinion of the witness. This witness testified that plaintiff and defendant visited in the home of witness for a week as man and wife. Such evidence, even if believed by the trial court, would not establish cohabitation as defined above. The lack of credulence given to such testimony could not be prejudicial to plaintiff's cause.

Affirmed.